## Cochran's Admr. v. Krause.

(Decided June 13, 1911.)

### Appeal from Kenton Circuit Court (C. C. L. & E. Division).

Personal Representative—Action for Death—Failure to Show Cause —Recovery—An action to recover damages for the death of a person can not be maintained by his personal representative where the evidence fails to show that the death resulted from the wrong complained of, the evidence tending equally to show that the death might have resulted from other causes.

MEYERS & HOWARD for appellant.

HERBERT JACKSON, MICHAEL G. HEINTZ for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Affirming.

Carrie L. Cochran, as administratrix of Louis Cochran, brought this suit against Phenominal Krause to recover damages for the death of the deceased under section 6 of the Kentucky Statutes, on the ground that his death resulted from an injury inflicted by the negligence of the defendant. An answer was filed controverting the allegations of the petition; the case coming on for trial before a jury, the plaintiff introduced testimony showing these facts: Louis Cochran was a

blacksmith living in Covington, Kentucky. His health was good until about November, 1909. In that month a trouble set up in one of his ears from which he suffered greatly. He consulted Dr. Harris who prescribed a lotion for the ear. This did not do him any good and Dr. Harris then recommended him to go to his brother, a specialist in Cincinnati. Cochran went to Dr. Harris in Cincinnati, who examined him, advising him that he had an abscess and that an operation was necessary. Cochran was not disposed to submit to an operation, and seeing an advertisement of Phenominal Krause in a newspaper, after some days, Cochran went to his office on Seventh and Elm streets, in Cincinnati. He told Krause in substance what Dr. Harris had told him, and Krause advised him that an operation was not necessary, and undertook to cure him. He then paid Krause $3.50 and Krause gave him a treatment which consisted in pounding around the ear with something similar to what they use in massaging in barber shops. At this time there was a slight swelling back of the ear, and there had been for some time a discharge of pus from the ear. He went back to Krause on three other occasions, and the effect of each treatment was the same, that is, it caused the swelling and pain to increase. After the fourth visit to Krause, finding that he was getting worse and not better, he went to Dr. Thrasher, of Cincinnati, who advised him that he was suffering from mastoiditis, which is an inflammation of the process back of the ear. Dr. Thrasher advised him that an immediate operation was necessary, refusing to undertake the case unless it was performed. In a day or so after this Cochran returned to Dr. Thrasher, the operation was performed, the bone was opened, and disclosed the condition which Dr. Thrasher had concluded was there. The diseased bone was removed, the abscess was cleansed, and for some days after this, the patient sensibly improved. But in a week or so he began to get worse. Another physican was then called in, a specialist on brain trouble, Dr. Neuman, from Austria, who happened then to be in Cincinnati. Dr. Neuman advised that there was an abscess in the temporal lobe of the brain, and that another operation should be performed to open it. The operation was performed by Dr. Neuman, the abscess was discovered as he had located it. It was cleansed and for some days

after this operation, the patient sensibly improved. Dr.
Neuman's operation was performed about the first of
January. Toward the latter part of January, the pa-
tient became very sick again, and died about the first
of February. After his death a post mortem examina-
tion was made which showed that another abscess had
formed in the cerebellum, which is back of the temporal
lobe of the brain, and that this abscess was the cause of
his death. The doctors who had charge of the case, al-
though they knew that another abscess had formed
somewhere on the brain after Dr. Neuman's operation,
were unable to locate it, and for this reason were unable
to relieve 'the patient. The plaintiff introduced several
physicians who testified in substance that Dr. Harris'
diagnosis of the case was correct, and that an operation
should have been performed as he advised; that the
delay in having the operation performed increased the
danger; that the pounding upon the space back of the
ear increased the irritation, and was the very treatment
that should not have been administered; that the op-
posite course should have been followed until an opera-
tion was performed; that they could not tell how long
the abscess in the cerebellum had existed there; that
90 per cent. of the abscesses in the brain come from an
abscess in the mastoid process; that the pus either finds
its way into the brain following the line of least resist-
ance, or is carried to the brain by the blood vessels, and
lodging forms an abscess. On this evidence, the court
peremptorily instructed the jury to find for the defend-
ant, and the plaintiff's petition having been dismissed,
he appeals.

The plaintiff's evidence shows very clearly that there
was negligence on the part of the defendant in the treat-
ment of the case. But this is not enough to warrant a
recovery in an action like this to recover for the death
of the patient. Under the statute there can be no re-
covery for the death of the patient unless it results
"from an injury inflicted by negligence or wrongful
act." In Hughes v. Cincinnati, &c., R. R. Co., 91 Ky.,
526, this court after setting out the evidence adduced to
show negligence, said:

"We are left to theorize as to it. One suing to re-
cover damages for injury arising from another's negli-
gence must offer some testimony conducing to show that

it was so occasioned.  *  *  *  Circumstances are merely presented upon which one may theorize as to the cause of the accident."

After citing a number of authorities the court thus summed up the rule to be applied:

"Where it is necessary to show a certain state of facts,. it is not sufficient to prove two or more different states of case, one of which may be sufficient, but either of which may equally, under the testimony, have existed."

The question was again before this court in Louisville Gas Co. v. Kaufman, et al., 105 Ky., 131. The court there, after setting out the evidence which left it uncertain as to what was the cause of the explosion complained of, said:

"Upon the state of fact thus presented by the plaintiffs the question before us is, not whether the finding of the court is with or against the evidence, or is flaggrantly against the evidence, but the question is whether the law will authorize a verdict on the problematical data and the uncertain and shifting foundations thus laid by the plaintiffs. When the question is one of negligence or no negligence, it is well-settled law that, where the evidence is equally consistent with either view—the existence or non-existence of negligence—the court should not submit the case to the jury, for the party affirming the negligence has failed to prove it."

These cases are in accord with the current of authority and have been followed by this court in a number of subsequent cases. (Morris v. L. & N. R. R. Co., 22 R., 1596; Hughes v. L. & N. R. R. Co., 23 R., 2289; Hurt v. L. & N. R. R. Co., 116 Ky., 553; L. & N. R. R. Co. v. Mulfinger, 26 R., 5; So. R. R. Co. v. Railey, 26 R., 54; Dana v. Blackburn, 28 A., 697; Grove v. L. & N. R. R. Co., 29 R., 727.)

It is apparent from the evidence that pus had formed in the mastoid process and was discharging at the ear when Cochran went to see Dr. Harris, and that the condition had existed for some days before that time. Whether the abscesses had then formed in the temporal lobe of the brain and in the cerebellum or whether they formed after this, is entirely a matter of conjecture under the evidence. It is true that the treatment which

Krause administered aggravated the trouble and increased the danger. Still the fact remains that we are left entirely to theorize as to what was the cause of the abscess that caused the man's death. The evidence entirely fails to show that the mistreatment of the malady by Krause caused the man's death. To submit the matter to a jury would be to allow them to theorize upon evidence and to speculate without anything to show that the man would not have died just as he did if he had not been treated by Krause. The evidence taken as a whole tends as much to show that his death was due to the delay in performing the operation as to any other cause, and it is wholly a matter of conjecture that if the operation had been performed on the day he went to see Krause, his life would have been saved.

We, therefore, conclude that the court properly refused to submit the case to the jury.

Judgment affirmed.