## Donoho v. Rawleigh.

(Decided June 7, 1929.)

BEN S. ADAMS and W. A. BERRY for appellant.

WHEELER & HUGHES for appellee.

12

This action was brought by appellee, who was the plaintiff below, to recover damages for injuries alleged to have been sustained by her by reason of the malpractice of the defendant as a dentist. The jury returned a verdict in favor of plaintiff for $2,000 and judgment was rendered for that amount. Defendant appeals.

The plaintiff had what is called and designated by dentists as an impacted wisdom tooth, or third molar, on the right side of the lower jaw. This wisdom tooth had not grown out so as to be free of the tooth in front of it, but had grown in the bone so that the head or crown of the wisdom tooth pressed against the roots of the second molar. The wisdom tooth, being imbedded in the bone, could not be extracted by the usual method of extracting teeth.

Appellant's principal contention is that his motion for a directed verdict at the conclusion of the evidence should have been sustained.

Appellant, who was the defendant below, is a dental surgeon in Paducah, Ky., and has specialized in the practice of removing impacted wisdom teeth. The plaintiff alleged in her petition that she employed the defendant to remove a tooth, and by reason of the unskillful and negligent manner in which he attempted to remove it, her jawbone was fractured. The defendant had previously removed two impacted wisdom teeth for the appellee. Plaintiff testified that in June, 1927, she discovered a small blister on her gum behind her wisdom tooth. She consulted the defendant, who took an X-ray picture of the jaw and found an impacted wisdom tooth which he advised her to have removed. It was agreed that she should return to the dentist's office on the following Thursday to have the tooth removed. She went to his office about 9 o'clock in the morning and he administered a local anæsthetic. After about 20 minutes he split the gum over the bone and began to work with a mallet, chisel, and a drill in an effort to remove the bone from above the impacted tooth. After a considerable period of time he placed an elevator under the tooth and attempted to remove it. While the elevator was being used the plaintiff's jaw was fractured. The defendant then called another dentist, Dr. Neville, and they succeeded in extracting plaintiff's tooth after the fracture had occurred.

The defendant testified that in removing the impacted tooth he used such instruments as are customarily used in such cases; that it was necessary to remove the bone by means of a drill, chisel, and hammer in order that the elevator could be placed under the tooth to force it out. The defendant, in describing the method employed by him in removing the tooth, and using a skull to illustrate his testimony, said:

"She came to me with a swollen area up here,— swollen gum back of the last tooth, where this wax is—right here (indicating on the skull which he had in his hand). I immediately suspected a wisdom tooth laying down this way, with the roots coming back this way, and the crown of the tooth against the roots of this tooth here in front of it. I then split her gum and peeled it back this way (indicating on the skull in his hand) and I deadened her gum so she would not have any pain, and it takes some little time for this nerve blocking to work. You have to get at it back here where the nerve comes through to deaden the side of the face so she would not have any pain. I usually wait from 30 to 45 minutes. I tested it to see if she could feel any pain and it took 45 minutes. I lanced her gum and peeled it back and under the gum was bone, all you could see was bone, you could not see the tooth. I peeled it back just as you see me peeling this red wax on this jaw bone which I have in my hand. This is the jaw bone over this tooth, and I removed that bone like I am removing this wax. This represents the chiseling of the jaw bone from over this tooth (indicating to the jury). After I had removed the bone from over the tooth I could see it. I did that in her case, that is what we always do,—it was necessary to remove the bone from over the tooth in order to expose the tooth and remove it. After removing all the bone from over this tooth, the roots are still back here, and then you work this way (indicating) down by the side of the tooth, just as I am doing with this wax on this jaw bone in my hand. This is an elevator which I am now using. After I chisel the bone away from this tooth I insert the point of the elevator underneath the tooth, nothing else will remove it. I work down under it, this way (indicating to the jury) and the tooth is so far down in the bone

it is almost in the center of the bone. You can see from the thickness of this jaw that a normal tooth almost fills the space of the entire jaw bone (indicating to the jury). I worked the elevator down under this tooth and elevated it up and that is when the fracture occurred. I might add that this opening back here (indicating on the jaw bone in his hand) is where the nerves and the veins pass through. We know where they are and—well this tooth lies directly on this nerve. The X-ray shows it, and we know the locating of it. The tooth lies directly over this nerve and when the tooth labors and cannot come out, it being down under this bone, that presses right back of this nerve. This nerve is connected with other nerves and it terminates, many times, in facial paralysis if not removed. When we find an impacted wisdom tooth like that we remove the tooth.''

A number of skilled dental surgeons were introduced by the defendant, who testified that the operation was performed according to the approved methods of practice of dental surgery in Paducah and other similar communities. The plaintiff introduced no evidence to the contrary. It was shown by these witnesses that a fracture of the jawbone was likely to occur and did sometimes occur when an impacted tooth was being removed by a dentist working in a careful.and skillful manner.

There is no evidence in the record of any unskillfulness or negligence on the part of defendant in removing plaintiff's impacted tooth. He testified that he used the proper and approved method or technique in removing the tooth, and in this respect he is supported by the testimony of the other dentists introduced as witnesses and who were qualified to testify on that point. Plaintiff wholly failed to make out a case of negligence, unless the jury should be permitted to infer negligence from the result, or, in other words, unless the doctrine of res ipsa loquitur applies to the facts in this case. That doctrine does not apply unless we can say that according to the ordinary experience of mankind, a fracture of the jawbone does not occur when an impacted tooth is being removed with proper care. The doctrine of res ipsa loquitur does not ordinarily apply in malpractice cases We are not unmindful of the fact that in some cases the lack of skill or want of care is so obvious that expert tes-

timony is unnecessary. This, however, is not such a case. The plaintiff has failed to point out anything which the defendant did or omitted to do that indicated lack of skill or care. It is merely claimed that want of care may be inferred from the result, but such an inference is not warranted without the aid of testimony by those skilled in the profession. In 21 R. C. L. 406, the rule as to burden of proof is thus stated:

"The law accords the medical practitioner the presumption that he has done his duty and, in a suit for injuries caused by alleged malpractice, the burden is on the plaintiff to prove the want of reasonable and ordinary care or skill. However, it is not necessary in an action against a physician or surgeon for unskillfulness. or negligence to prove gross culpability on his part; proof of any failure to exercise proper care or any neglect in the discharge of the duty assumed is sufficient. Further, the burden is on the complaining patient to prove that the injury complained of resulted from such want of care or skill. A bare possibility of such result is not sufficient. The burden of proof is not shifted by showing that an unsuccessful result has attended the treatment of the patient by the physician. Nor does the unsuccessful result of the case shift from the plaintiff to the defendant the burden of going forward."

In order to recover damages from a physician or dentist for want of proper care or skill, plaintiff has the burden of showing that the defendant was unskillful or negligent and that the injury complained of was produced by such want of skill or care. Hanners v. Salmon, 216 Ky. 584, 288 S. W. 307; Miller v. Blackburn, 170 Ky. 263, 185 S. W. 864; Cochran's Adm'r v. Krause, 144 Ky. 202, 137 S. W. 1053. In malpractice suits against dentists such proof can only be established by the testimony of experts skilled in the dental profession. They are the only witnesses who are qualified to testify as to whether there was negligence in the method of treatment. Barrett's Adm'r v. Brand, 179 Ky. 740, 201 S. W. 331; Kuehnemann v. Boyd, 193 Wis. 588, 214 N. W. 326, 215 N. W. 455; Gallagher v. Kermott, 56 N. D. 176, 216 N. W. 569.

16

We have been cited no domestic malpractice cases in which the patient suffered a broken jawbone resulting from an attempt to remove an impacted tooth, nor has our independent investigation revealed any, but a number of such cases have been before the courts in other jurisdictions, and the great weight of authority is that negligence may not be inferred from the unfortunate result.

In Hopkins v. Heller, 59 Cal. App. 447, 210 P. 975, a dentist was sued for damages for injuries to plaintiff's jawbone alleged to have been caused by reason of the negligent and unskillful manner in which he extracted an impacted wisdom tooth. The court said:

"The evidence shows that the time occupied in extraction of the wisdom tooth was unusually long, and that this extension of time resulted from the density of the process and from the fact that the crown of the tooth broke off. This made necessary the operation of burring around the tooth, to loosen the adhesion of the tooth to the adjacent process, and make better leverage for use of the elevator. All of the witnesses agreed that the breaking of a crown from a tooth is not uncommon, and frequently occurs without fault of the dentist. We have examined the testimony at length, and particularly the testimony relied upon by counsel for respondent, but we have not found any evidence tending to prove that any act done by the defendant in extracting the plaintiff's tooth was negligently done, or that he omitted to do anything therein that in the exercise of due care he should have done. The injuries suffered by the plaintiff resulted from the operation whereby the tooth was extracted. But the evidence is insufficient to prove that they resulted from negligence of the defendant in performing that operation. To sustain the judgment without proof of such negligence would be to hold the defendant as a warrantor against misfortune. But he is not thus bound. Perkins v. Trueblood, 180 Cal. 437, 181 P. 642."

In Blodgett v. Nevius, 189 Ill. App. 544, it was held that in an action for alleged malpractice in extracting a tooth whereby a fracture of the jaw resulted, the burden rested on the plaintiff to show want of care or skill on the part of the defendant, and that the bad result following

the treatment was the result of such want of care and skill, and no presumption that the defendant was unskillful or negligent would follow from the mere fact that the jaw was fractured and that the plaintiff was otherwise injured.

In Flanagan v. Smith, 197 Iowa 273, 197 N. W. 49, a dentist removed an impacted tooth and the resulting wound became infected. It was held that where there was evidence that infection sometimes occurred notwithstanding every precaution, there was no presumption of negligence on defendant's part arising from the infection itself.

In Vale v. Noe, 172 Wis. 421, 179 N. W. 572, a dentist was preparing a tooth for a crown when the electrically operated stone or disk with which he was grinding the tooth slipped and cut the patient's mouth and tongue. It was held that the burden was on the patient to prove that the cut was the result of defendant's negligence and that negligence of the dentist could not be inferred from the circumstances, there being no room for the application of the doctrine of res ipsa loquitur.

In Van Epps v. McKenny (Sup.) 189 N. Y. S. 910, plaintiff sued to recover damages because of the alleged negligent attempt of a dentist to extract an impacted wisdom tooth, breaking the jaw, and it was held that it was for the plaintiff to establish that the defendant was negligent; that is, that he failed to exercise that degree of care that an ordinarily careful, skillful, and prudent operator in the locality in question would have used.

In Donoghue v. Shaw, 170 Mich. 544, 136 N. W. 367, it was alleged that the defendant, a dentist, negligently dislocated the plaintiff's lower jaw while extracting her teeth. The trial court submitted to the jury the question of defendant's negligence in failing to discover that plaintiff had sustained a dislocation of the jaw as the result of the extraction of her teeth, but the court further instructed the jury that the mere fact that plaintiff's jaw was dislocated did not alone raise any question of negligence of the defendant in view of the undisputed testimony of experts that a dislocation of the jaw sometimes occurs as the result of the extraction of teeth. The instruction was approved.

We conclude that the mere fact that the plaintiff suffered injury is not of itself alone proof of negligence upon the part of the defendant, and that the trial court

erred in overruling defendant's motion for a directed verdict.

It is insisted for the plaintiff that even though the doctrine of res ipsa loquitur does not apply in an action for malpractice, yet, when an injury occurs such as the one in question very little additional evidence will be required to take the case to the jury, and it is suggested that there was testimony that all of the bone was not removed from above the tooth, and that the failure to remove all of the bone caused the fracture when defendant attempted to force out the tooth, and that this was sufficient proof of negligence to require the submission of the case to the jury. That all of the bone above the tooth was not removed is merely an inference of the plaintiff. There is no testimony that all of the bone above the tooth was not removed, but, on the contrary, the defendant testified that it was removed, as a reference to his testimony heretofore quoted will disclose.

Counsel for plaintiff also insist that the defendant was not entitled to a peremptory instruction because he had not denied the essential averments of the petition. Some of the denials of the answer are in the conjunctive, but an amended answer, which was traversed by a reply, put in issue every question that is presented by the petition. Furthermore, this contention was adversely disposed of in Brooks v. City of Maysville, 151 Ky. 707, 152 S. W. 788, wherein the court said:

"Our attention has been called by the brief of appellant's counsel to certain denials of appellee's answer, which it is claimed admit it constructed and maintained the sewer, and only put in issue the question of its negligence in the matter of its construction and maintenance. It is also contended that the answer is, in part, made up of conjunctive denials, which leave in doubt what the pleader meant to deny. The first objection to the pleading in question, even if made in the court below, could not have prevailed, because the answer of appellee to the amended petition cured the defect in the original answer, as it expressly denied the appellee constructed, adopted or maintained the sewer.

"The second objection is equally untenable, because the defects in the answer, to which it refers, were if not waived by the appellant's failure to de-

mur to the answer in the court below, cured by the verdict and judgment. Whatever may have 'been the defects in the answer, the issues were treated on the trial, and the proof directed to them, as if they had been properly presented by the pleadings. This being true, it is too late for appellant to complain of defects in the answer.''

Also see Rogers v. Felton, 98 Ky. 148, 32 S. W. 405; 21 R. C. L. 560, 561.

From the conclusion we have reached it will be unnecessary to discuss the other assignments of error. Upon a return of the case, if the evidence is substantially the same as on the former trial, the court will peremptorily instruct the jury to find for the defendant.

Wherefore the judgment is reversed for a new trial consistent herewith.