## Rawleigh v. Donoho.

(Decided April 24, 1931.)

WHEELER & HUGHES for appellant.

BEN S. ADAMS for appellee.

OPINION OF THE COURT BY HOBSON, COMMISSIONER—
Affirming.

The facts of this case are stated in the opinion on the former appeal. See Donoho v. Rawleigh, 230 Ky. 11, 18 S. W. (2d) 311, 69 A. L. R. 1135. On that appeal it was determined that the circuit court erred in overruling the defendant's motion for a directed verdict. On the return of the case it was tried again, and at the conclusion of the evidence for the plaintiff the court instructed the jury peremptorily to find for the defendant. The plaintiff appeals.

The only material testimony not introduced on the other trial is that of Dr. George Rawleigh and the deposition of Drs. Yager, Hume, and Williams. Dr. Rawleigh stated in substance these facts: He is a physician and surgeon, graduating from the St. Louis School of Medicine in June, 1924; he had had training and work as a physician and surgeon, including the reading and interpretation of X-rays, both at the university and at the St. Louis City Hospital, which he entered after graduating at the university, and served there in 1924 and 1925, attending to general work and handling fractures. He was on the emergency service staff throughout the entire time, handling fracture cases and cases in general. He was one of two or three anaesthetists in the hospital; that is, a physician who gives anaesthetics, and he administered such while in the hospital for the dentists who did extracting work. He was handed the two X-ray pictures, which Dr. Donoho testified he had taken of the plaintiff's tooth in question, and testified in substance that these pictures showed the crown of the tooth, but that from them you could not tell or see the roots of the tooth. You could only see the anterior portion. The crown was shown, part of it distinctly and part indistinctly. He was then asked this question:

"Q. I will ask you to examine the two X-ray pictures which the defendant has sworn were the only pictures made by him before the operation was

attempted or performed, and which have been introduced in the evidence, and after examining these pictures tell the jury whether or not in your opinion those pictures are sufficient for the purpose of determining the location of the impaction with sufficient accuracy to perform the operation?''

The defendant objected. The court sustained the objection, and this avowal was made:

"That the pictures do not show all of the impaction; that they were not sufficient to locate the impaction with sufficient certainty as to allow the operation to be properly performed."

On the former appeal this rule was laid down:

"In malpractice suits against dentists such proof can only be established by the testimony of experts skilled in the dental profession. They are the only witnesses who are qualified to testify as to whether there was negligence in the method of treatment." Donoho v. Rawleigh, 230 Ky. 15, 18 S. W. (2d) 311, 313. See, also, 69 A. L. R. 1135, and notes.

Dr. Rawleigh's testimony does not show that he is an expert skilled in the dental profession or qualify him to give an opinion that the X-ray pictures were not sufficient to locate the impaction with sufficient certainty to allow the operation to be properly performed. The court properly sustained the objection to his testimony under the above rule. While he was a physician, he had had no experience in such dental work to qualify him to testify as an expert thereon.

The depositions of Dr. Williams, Dr. Yeager, and Dr. Hume were taken by the defendant after the former appeal. The X-ray pictures were not shown them. They were dentists of experience and qualified to testify as experts. On direct examination, these witnesses, in answer to a hypothetical question submitting the facts as shown on the former trial by the defendant, testified that there was no want of care on his part. But on cross-examination there were these questions and answers in Dr. Williams' deposition:

"Q. In applying your diagnosis preparatory to removing an impacted third molar, a radiograph

in order to be adequate, and in order to conform to this standard we are speaking of, should show enough of the root formation for you to determine whether there is any deflection there, or how the roots lay, shouldn't it Doctor? A. It should.

"Q. It should enable you to determine from an examination of it whether or not there is any bony structure between the mesial and distal roots of that impacted molar, shouldn't it? A. It should. * * *

"Q. You spoke of the angle at which an X-ray is taken and its effect upon the appearance of a fracture, isn't it true also that the angle from which the picture is made would materially affect the appearance of an impacted tooth, or any other tooth? A. That is right.

"Q. And unless it is correctly taken or taken at such a way as to properly portray the entire bony or other substance you are interested in, it might mislead as to its location, isn't that true? A. It is entirely possible."

In Dr. Yeager's deposition on cross examination are these questions and answers:

"Q. The inter-oral film should show the entire tooth should it, that is from the crown or the occlusal surface to the roots including the root? A. Including the root.

"Q. Then in order to determine whether or not there is any deflection, buccal or lingual, you would take a photograph from another angle, would you not? A. Sometimes that is necessary and sometimes it is not.

"Q. Well, if the first picture did not show all of the tooth so that there could be no doubt about the position of it, you would check it by a picture from another angle, would you not? A. Yes, sir. * * *

"Q. If you took an X-ray photograph which did not show all of the impacted tooth, if that photograph were taken from an angle so far forward that a portion of the occlusal surface or crown of the impacted tooth could only be seen through the second molar, would an X-ray of that character be satisfactory to you? A. Yes, sir.

"Q. Or would you take another? A. It would be satisfactory because from the shadow you can tell whether or not it is tipping buccally or lingually.

"Q. Could you form an accurate idea of the location of the tooth from that single photograph without even seeing all of the roots of the tooth? A. All the roots of the tooth?

"Q. Yes. A. I don't think so.

"Q. Then if that situation prevailed it would be necessary to check that radiogram or photograph or whatever it is called, by another, would it not doctor? A. It would."

Dr. Hume gave similar testimony. Dr. Williams stated that the first step that should be taken in such cases is an X-ray examination, which should show the conditions. Dr. Yeager makes this statement as to the first step to be taken:

"Well, in the first place I would get an X-ray to see what the conditions really were, and after the X-ray and taking into consideration the conditions from the standpoint of the X-ray, and from the patient's condition, I would remove the tooth, if the indications pointed that that was the thing to do."

The above is in substance all there is in these depositions which is relied on to make out the plaintiff's case. The question presented is, Is the above testimony taken in connection with Dr. Rawleigh's testimony, that the X-rays in question were inadequate, sufficient to take the case to the jury?

There is no testimony that Dr. Donoho did anything that he should not have done if he had had more perfect X-rays. The breaking of the plaintiff's jawbone is the thing complained of, but there is no testimony that he did anything not in accordance with the proper practice in such cases. These witnesses state that in such cases the jawbone may be broken, notwithstanding all proper care is observed. It is not shown that the doctor did any cutting that, in the exercise of proper care or with more perfect X-rays, should not have been done, or that he failed to use proper instruments or used more force than was proper. To hold him liable, it must appear that he failed to use proper care, and that by reason of such want of care the injury was incurred. As held in the former opnion, which is the law of the case, it is not sufficient to show that the injury occurred. It must be shown

that the doctor did what he, in the exercise of proper care, ought not to have done, or did it negligently, and that the plaintiff's injury was the proximate result of such want of proper care on his part. This the proof here failed to show.

"The rules relating to burden of proof in civil actions generally, particularly those governing actions for negligence, are applicable in an action against a physician or surgeon for malpractice. Plaintiff has the burden of establishing the breach of duty on the part of the physician or surgeon and the causal connection between the breach of duty and the injury complained of. As in civil actions generally, where plaintiff introduces evidence sufficient to make out a prima facie case, it is then incumbent upon the adverse party, in order to prevent a recovery, to introduce evidence sufficient to overcome or rebut such showing." 48 C. J. 1143, 1144, Sec. 153.

The proof for the plaintiff here was not sufficient to make out a prima facie case, and the court properly instructed the jury peremptorily to find for the defendant.

Judgment affirmed.