## Steinmetz v. Humphrey.

March 6, 1942.

Robert E. Hogan for appellant.

L. R. Curtis, Curtis & Curtis, and Edward P. Humphrey for appellee.

Opinion of the Court by Judge Fulton—Affirming.

The appellant, Charles Steinmetz, by his mother and next friend, Madlene Steinmetz, instituted this malpractice action against the appellee, Dr. Heman Humphrey, and at the close of all the evidence a verdict was directed for the appellee. Hence this appeal.

On August 21, 1939, Charles Steinmetz, seven years of age, stepped on a broken glass jar and sustained a deep cut in his foot. A physician was called and the flow of blood was stopped by clamps. Two days later a severe hemorrhage from the wound took place and Dr. Humphrey was called in. The child was removed to a hospital and Dr. Humphrey operated on the foot and repaired an artery which had become severed—this artery was the largest one in the foot, running from top to bottom of the foot. According to the medical testimony in the case the operation was very difficult because the bones of the foot were so close. As a result of this situation two surgical needles were broken and remained in the wound. These needles worked to the surface of the child's foot, one in the latter part of October and the other in December, and were pulled out by the boy's mother. The child continued to suffer considerable pain for sometime after the last needle was removed and, according to his mother, was unable to attend school during the remainder of the school year.

Mrs. Steinmetz testified that the wound was not infected when the child was taken to the hospital, assign-

ing as the reason for her belief the fact that there were no red streaks around the wound. However, we regard this, at the most, as no more than a scintilla of evidence on this point since Dr. Humphrey and four surgeons testifying in his behalf make it clear that the wound was infected and that the hemorrhage was due to infection which dissolved the blood clot.

Dr. Humphrey and the professional nurse assisting in the operation testified that the child "went bad," while on the operating table and that it was necessary to stop the operation and help the anesthetist resuscitate him. By reason of this necessitous action, said Dr. Humphrey, he was unable to locate and remove the broken needles. They both stated that the boy vomited to such an extent that it was necessary to stop the operation. According to them the child turned blue and his pulse was irregular. They also say that Dr. Humphrey turned the child over on the operating table, inserted his finger into the mouth to extract the vomit and used artificial respiration.

Mrs. Steinmetz, who was in and out of the operating room during the operation, and a neighbor, Mrs. Bachman, testified that the child did not turn blue and was not turned over on the operating table and that he did not vomit although Mrs. Bachman says that some kind of fluid ran out of his mouth.

All medical testimony was to the effect that surgical needles frequently break regardless of the amount of care used by the surgeon, especially in a case of this character where the work was narrowly confined by closely juxtaposed bones. All medical testimony was further to the effect that in the circumstances detailed by Dr. Humphrey and the nurse it was imperative that the child should be resuscitated rather than continue the search for the broken needles. Dr. Humphrey testified that he attempted to locate the broken needles with his gloved finger but was not certain whether they were removed from the wound. He further said that it would have been bad surgery to have probed for the needles on account of danger of spreading infection already in the child's foot. All medical testimony corroborates this statement and it appears conclusively that Dr. Humphrey would have been pursuing a dangerous course had he attempted to probe for the broken needles after being unable to locate them with his hand, even though the

child had not "gone bad" on the table. The evidence also establishes that the needles were sterilized and that such needles cannot and do not cause infection even though they are broken off and remain in a wound. It was also proven that such needles remaining in an infected wound will eventually work out while those remaining in an uninfected wound sometimes work out and sometimes become encisted. It may be added that only one medical witness, an osteopathic physician and surgeon, was called for the appellant. This witness furnished no testimony of any material bearing on the case. The effect of this testimony was that it is possible for sterilized needles to become infected while being used and thus cause infection in a wound. From this testimony however, it is clear that if this happened infection could be spread whether or not the needles were broken and remained in the wound.

The negligence alleged in the petition was that of permitting the broken needles to remain in the wound, thereby causing the child to be injured and his foot to become infected, resulting in pain and suffering. This was an allegation of a specific act of negligence and, although the petition contained a later general charge of negligence, only the specific act may be considered since it is our rule that where the petition contains a charge of general negligence, coupled with specific acts of negligence, the plaintiff is confined to the specific acts. Stacy v. Williams, 253 Ky. 353, 69 S. W. (2d) 697. In determining the correctness of the trial court's action in directing a verdict we are therefore limited to the question whether the proof was sufficient to show that the act of the appellee in permitting the broken needles to remain in the wound was the cause of infection and of subsequent pain and suffering endured by the appellant.

It is the position of appellant's counsel that the factual situation proven on the trial called for the application of the doctrine of res ipsa loquitur. In support of this argument we are cited to the domestic cases of Samuels v. Willis, 133 Ky. 459, 118 S. W. 339, 19 Ann. Cas. 188, and Barnett's Adm'r v. Brand, 165 Ky. 616, 177 S. W. 461. In both of these cases surgical sponges were left sewn up in the abdomen of the patient. We think they have little application here since it is within the common knowledge of the ordinary layman that the leaving of a surgical sponge in the abdomen, in the absence

of an explanation showing imperative reasons for so doing, is negligence. In the Brand case it was said that if delay in exploring for the sponge would endanger the patient's safety the surgeon was not negligent in leaving the pad or sponge in the abdomen. We are also cited to the cases of Sellers v. Noah, 209 Ala. 103, 95 So. 167, and Ernen v. Crofwell, 272 Mass. 172, 172 N. E. 73, 69 A. L. R. 1140. In the former case a portion of a surgeon's needle was left in the patient's body and in the latter case a portion of a hypodermic needle was left in the jaw of a patient by a dentist. In both of those cases it was held that the burden of proof passed to the defendant to show that the presence of the needle was not due to negligence and in both of them there was evidence that the patient's pain and suffering resulted from leaving the needles in the wound—both of these issues of fact being contested in evidence, it was held that a case was made for the jury.

The rule in this state was stated in Stacy v. Williams, supra [253 Ky. 353, 69 S. W. (2d) 704], as follows:

"The presumption of negligence is never indulged in from the mere evidence of mental pain and suffering of the patient, or from failure to cure, or poor or bad results, or because of the appearance of infection. The burden of proof is upon the patient to prove the negligence of the physician or surgeon, and that such negligence was the proximate cause of his injury and damages. * * * The doctrine of res ipsa loquitur has no application in such cases. Miller v. Blackburn, 170 Ky. 263, 185 S. W. 864; Donoho v. Rawleigh, 230 Ky. 11, 18 S. W. (2d) 311, 69 A. L. R. 1135. * * * The presence of infection following an operation is neither prima facie evidence of, nor per se, negligence."

In the light of this rule it is our conclusion that the trial court properly directed a verdict for the appellee. There was a complete absence of competent testimony to establish that the appellant endured any additional pain and suffering by reason of the broken needles being left in the wound. The child had had a serious operation upon a badly infected foot and it is beyond question that he was bound to undergo a considerable period of pain and suffering, no matter how carefully and skillfully the operation was performed. There was no medi-

714

cal evidence as to any added pain or additional injury caused by the needles and, as pointed out in Stacy v. Williams, supra, proof on such issues must be established by expert testimony. Further, all medical evidence in the case is to the effect that it would have been bad surgical practice for Dr. Humphrey to have probed for the broken needles on account of danger of spreading infection even had it not been necessary for him to suspend his search for the needles when his patient "went bad" during the progress of the operation. This fact must be taken as conclusively established in the absence of medical testimony to the contrary, since, on this point, only expert witnesses could testify, as pointed out above. To prove negligence in an action of this character the plaintiff must show that the surgeon's practice did not accord with the standard of members of his profession in the community. This was not done. On the contrary, all competent testimony was to the effect that skillful physicians all adopted the same procedure as that adopted by appellee in the circumstances proven. The appellant merely proved that the appellee permitted the needles to remain in the wound but did not prove by any competent evidence that this was negligently done or that any damage or injury resulted from such action.

Judgment affirmed.