## Merker v. Wood.

April 30, 1948.

Raymond C. Arny and Carl J. Richard for appellant.

Louis Seelbach and L. R. Curtis for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SIMS—Reversing.

Mrs. Merker instituted this action against Dr. Charles F. Wood to recover $16,000 damages she averred resulted to her by reason of appellee's alleged negligence and malpractice in reducing a fracture of her left leg. The answer was a traverse, followed by a plea of contributory negligence. At the conclusion of appellant's evidence the court directed a verdict in favor of Dr. Wood and Mrs. Merker appeals. It is apparent that a brief resume of the evidence is necessary to determine the correctness of the trial judge's ruling.

In the early afternoon of Tuesday, Aug. 21, 1945, Mrs. Merker, then about 50 years of age, was sitting in a porch swing with her grown son at her home in Louisville. The swing fell and Mrs. Merker suffered a fracture of her left leg in or near the ankle. Her family physician, Dr. Wade G. Sacklette, was reached by telephone and he recommended that Mrs. Merker be taken to a hospital for treatment by a specialist.

Mrs. Merker was taken in an ambulance to St. Joseph's Infirmary, where Dr. Wood, a member of the hos-

pital staff, directed that an X-ray be made of the injured leg. The picture revealed fractures of the lateral malleolus, of the medial malleolus and of the posterior lip of the tibia, with a dislocation of the ankle joint. Dr. Wood's deposition, taken as if upon cross-examination, was read upon the trial. He testified he ordered Mrs. Merker anesthetized and he reduced the fracture; after all parts were put in normal position he checked the alignment by a fluoroscopic examination and then applied a plaster cast from the hip down; that immediately after this cast was applied an X-ray was taken through the cast which showed satisfactory position and alignment of the fractured fragments and satisfactory position of the parts of the ankle joint.

Mrs. Merker testified that she came out of the anesthetic just as the cast was being completed and no X-ray was made of her leg through the cast. However, she admitted she was a little groggy when coming out of the anesthetic. But a witness Mrs. Merker put on the stand, Dr. Raymond E. Jones, testified that when Mrs. Merker came to the hospital for treatment on October 2, 1945, he obtained an X-ray of the initial fracture, and one taken after the cast was applied. Furthermore, Dr. Wood's deposition showed that he told appellant's counsel just how they could get the X-ray pictures from the hospital, but none were produced on the trial.

It is our conclusion there is no issue made by any substantial evidence as to whether an X-ray was taken immediately after the cast was applied. As we read this record, the evidence conclusively shows an X-ray was taken immediately after the cast was applied.

On the day following Mrs. Merker's admittance to the hospital Dr. Wood saw the patient there and told her she might be taken home on the next day, August 23rd, but that she would have to return to the hospital in approximately ten days for an X-ray examination and treatment. There is no controversy between the parties as to this.

While at her home on August 24th, Mrs. Merker was in much pain and had her grown daughter telephone Dr. Wood informing him of this fact, telling him that Mrs. Merker thought the cast had slipped and asking if she should bring her mother to the hospital. The

daughter testified Dr. Wood said to her over the phone that the cast could not possibly have slipped enough to hurt her ankle—that he bossed his patients and did not let them boss him. The daughter was next asked what did she then do or what was she told to do, and she replied, "I wasn't told to do anything."

In his deposition Dr. Wood testified that, to the best of his recollection, in the telephone conversation with the daughter on August 24th, he told her to bring Mrs. Merker to the hospital for X-ray examination and treatment; that he did not tell the daughter the cast could not have slipped and that her mother had nothing to worry about; he deemed it advisable for the mother to return for X-ray examination to ascertain whether or not the cast had slipped, and so advised the daughter over the phone.

It is patent there is a conflict between the testimony of the daughter and that of Dr. Wood on this very important telephone conversation of August 24th. If the daughter's testimony is believed, then Dr. Wood was negligent in not directing that Mrs. Merker return to the hospital without delay for an X-ray examination to determine whether the cast had slipped and whether the fractured members were in apposition or were out of alignment. If the testimony of Dr. Wood is believed, then he was not negligent because he testified he directed the daughter to bring her mother to the hospital immediately for a check up. Thus we see there is an issue of fact for the jury's determination.

The daughter further testified that on Friday, September 1st, before her mother was due to return to the hospital on Sunday when her first ten days were up, she phoned Dr. Wood and asked if she could bring her mother to the hospital on the next day, Saturday; that Dr. Wood replied, "No, he had too many patients, and didn't do that work on Sunday, and Monday was a holiday and he had too many patients Tuesday, but he maybe could get to her Wednesday." The daughter then called Dr. Sacklette.

Dr. Sacklette testified that he contacted Dr. Wood and told him that Mrs. Merker needed attention; that Dr. Wood assured him there was no danger and he would take care of Mrs. Merker, but that it would not

be necessary for him to see her until after the six weeks were up. Dr. Sacklette had no idea when this conversation with Dr. Wood occurred. He could not state whether it was one, two, three or four weeks after the accident or whether it was shortly before Dr. Wood went on his vacation the first of October. From the fact the daughter testified she called Dr. Sacklette after she failed to get any satisfaction out of Dr. Wood on September 1st, the jury could reasonably infer that it was soon after the daughter called Dr. Sacklette that he talked to Dr. Wood. In his deposition when asked about the telephone conversation the daughter detailed as occurring on September 1st, Dr. Wood testified that he had no recollection whether or not the daughter had this conversation with him; and, of course, he did not recall his response to her. Nor did Dr. Wood recall any conversation with Dr. Sacklette concerning Mrs. Merker. But he was most emphatic in denying that he told Dr. Sacklette there was nothing to worry about and that he did not want to see Mrs. Merker until her six weeks were up, at which time he would change her cast.

Thus we see there is an issue between Dr. Sacklette and Dr. Wood on a material point; also, between Dr. Wood and Mrs. Merker's daughter as to whether he would see his suffering patient within a reasonable time after notice from her daughter that she needed his attention. If the jury should reject the testimony of Dr. Wood and accept that of Dr. Sacklette relative to his conversation with Dr. Wood, or accept that of Mrs. Merker's daughter relative to returning her mother to the hospital, then Dr. Wood would be guilty of negligence and malpractice according to the standard he, himself, set as to the ordinary medical or surgical skill applied to the handling of such a case, as will be seen subsequently from a reference to Dr. Wood's testimony.

The cast applied by Dr. Wood on August 21st remained on Mrs. Merker until October 2nd, during which time she was not seen by him (except on August 22nd), nor was an X-ray or other check made of her leg. On October 2nd Mrs. Merker presented herself at St. Joseph's as a patient of Dr. Wood. He was on his vacation and a resident member of the hospital staff, Dr. Raymond E. Jones, removed the cast and made an X-ray examination, which revealed that the fragments

were out of line and had healed in a displaced position. He could not say when the fragments lost their alignment. When asked if it were possible for them to have gotten out of line on August 24th, he answered, "Yes, sir. * * * Anything, certainly, would be possible." Dr. Jones put a boot-cast on the patient in which was incorporated a walking-iron so Mrs. Merker would not be confined to her bed; and he advised her to see Dr. Wood as soon as he returned from his vacation.

When Dr. Wood returned from his vacation, Mrs. Merker saw him on October 29th, at which time he informed her it would take surgery to get the fractured fragments back in place. Dr. Wood testified that fragments sometimes would slip—why, nobody knew; that the proper practice would have been to make X-rays of the leg at fairly frequent intervals after August 21st; that the X-ray of October 2nd showed that the bones were healing in a position of some displacement which had apparently existed for a considerable time, and that X-rays taken any time from August 24th would have shown the fragments to be in the position they were in on October 2nd. He stated that he had told Mrs. Merker to return to the hospital from ten days to three weeks and he presumed she considered him her doctor.

Dr. Richard Hudson, an orthopedic surgeon of Louisville, testified that the usual practice in that community in such cases would have been to have advised Mrs. Merker to return to the hospital for an X-ray check up within a reasonable time after the surgeon had received word that the patient thought the cast had slipped, because without making an X-ray one could not tell whether or not the bones were displaced.

Appellee contends that the res ipsa loquitur doctrine does not apply in malpractice cases, citing such authorities as Miller v. Blackburn, 170 Ky. 263, 185 S. W. 864, and Donoho v. Rawleigh, 230 Ky. 11, 18 S. W. 2d 311, 69 A. L. R. 1135; and that the plaintiff in such cases must prove negligence by competent expert testimony and that such negligence was the proximate cause of the plaintiff's injury, citing Stacy v. Williams, 253 Ky. 353, 69 S. W. 2d 697; Williams v. Tarter, 286 Ky. 717, 151 S. W. 2d 783, and Steinmetz v. Humphrey, 289 Ky. 709, 160 S. W. 2d 6.

There is no doubt that this is the rule, subject to the limitation that if the subject matter is within the common knowledge of laymen, the testimony of expert witnesses is not required. Meador v. Arnold, 264 Ky. 378, 94 S. W. 2d 626; Rising v. Veatch, 117 Cal. App. 404, 3 P. 2d 1023; Whitson v. Hillis, 55 N. D. 797, 215 N. W. 480.

It is not denied that the rule in such cases as this is, a physician or surgeon must exercise such care and skill as is generally exercised by physicians or surgeons practicing in a similar community in the performance of like duties; and if he fails to do so, he is liable to one injured as the direct and proximate result of his carelessness or negligence. Van Sant's Adm'r v. Overstreet, 261 Ky. 58, 86 S. W. 2d 1008; Walden v. Jones, 289 Ky. 395, 156 S. W. 2d 609, 141 A. L. R. 105. In the instant case we have the testimony of appellee and of Dr. Hudson that the usual practice of orthopedic surgeons in Louisville in this character of injury requires that an X-ray check of the patient should be made frequently after the fracture is reduced. The testimony of these two surgeons plainly shows that had such X-ray examinations been made of Mrs. Merker's leg, they would have revealed that the fragments had slipped. It is evident that the bad results Mrs. Merker received were due to the fact that no X-ray checks were made of her leg between August 21st and the following October 2nd.

Whether or not this was due to appellee's failure or refusal to see Mrs. Merker or to her not presenting herself to him at the hospital, as he directed, is a question for the jury. Sight must not be lost of the fact that the testimony of the daughter and of Dr. Sacklette is that when they communicated to Dr. Wood that Mrs. Merker needed attention, he told them it was not necessary for him to see the patient or check her condition at that time. If their testimony is accepted by the jury, then Mrs. Merker was not guilty of contributory negligence as a matter of law in not presenting herself to Dr. Wood within ten days after he reduced the fracture, as he directed her to do.

The judgment is reversed with directions that if the evidence for Mrs. Merker on another trial is prac-

338

tically the same as that heard on the first trial, then the court will not direct a verdict in favor of appellee at the conclusion of the evidence for appellant.