**James BUTTS, Appellant,**

v.

**W. P. WATTS, Appellee.**

Court of Appeals of Kentucky.

March 2, 1956.

Rehearing Denied June 22, 1956.

Rodes K. Myers, George B. Boston, Bowling Green, for appellant.

G. D. Milliken, Jr., Bowling Green, for appellee.

STANLEY, Commissioner.

The appeal is from a judgment on a directed verdict for the defendant in an action against a dentist for malpractice.

The appellant, James Butts, suffering severe pain from a wisdom tooth, accompanied by great swelling, went to Dr. W. P. Watts in Bowling Green for relief. The dentist took an X-ray picture and determined the position of the tooth, injected novocain to relieve the pain and proceeded to extract it. In the process the tooth shattered, and he removed the splinters.

He packed the cavity with medicated gauze and gave the patient an aspirin or other sedative. Suffering considerably, Butts returned the next morning and Dr. Watts changed the packing and advised him to go to see a physician, to be treated with penicillin. The physician, Dr. Moss, administered it and gave him some pain-relieving medicine. Butts returned the third day to the dentist who again merely changed the packing. His physician again administered penicillin. The pain spread and Butts' arm became numb and so stiff he could not raise it. He called Dr. Watts about his condition, and he told Butts "he didn't want to fool with it any more." Some three weeks later Butts went back to see Dr. Moss and later to see another dentist, Dr. Shreve. He took X-ray pictures which disclosed a piece of broken tooth embedded in his jaw. It was about the size of the head of a kitchen match. Dr. Shreve removed the fragment, and the patient recovered from his disability.

Butts' parents testified they had telephoned Dr. Watts and asked if there was not something he could do to relieve their son's pain. Dr. Watts told the mother when she suggested he take an X-ray picture that he "positively will not take an X-ray picture" and that he had done all that he could for her son. He told his father, "I have fooled with him and I am not going to fool with that case any more. I can't help it; I am through."

After the fragment was removed, plaintiff continued under treatment by Dr. Carson, a physician. On Dr. Shreve's recommendation, Butts was examined by Dr. Carter, another dentist, and by Dr. Meacham, a nerve specialist in Nashville. The plaintiff proved considerable expense and loss of time from work.

The plaintiff well proved the swollen condition of his jaw before and his disability after the extraction. But it is fair to say Dr. Watts testified when called by plaintiff as if upon cross-examination that there was no swelling of the patient's jaw. This was the only bit of the plaintiff's evidence that was denied. All the rest of it stands admitted. Dr. Watts testified that he had pursued the proper course and customary practice for routine extractions, which he regarded this one to be. He testified, "If you break a root, most of the time you feel it or you hear it." He had not felt or heard any breaking of this patient's tooth.

There is a little testimony that may be regarded as technical. Dr. Carter appears to have been a reluctant witness and equivocal in answering questions attempting to elicit expressions of technical opinion. In regard to the defendant's statements about not "fooling with the case any more," the witness qualifiedly admitted it would be good ethical practice for a dentist having sole responsibility of a patient, to see the patient. Evidence of a technical character which may be regarded as sustaining the plaintiff's case is an admission of the defendant, Dr. Watts. In answer to the question if it is not the recognized practice of the dental profession to prescribe penicillin or other chemicals to prevent infection before extracting a tooth, he replied that it is "in a real bad case; in extreme swelling." The plaintiff had testified to facts showing his to have been such a case.

The court directed the verdict for the defendant at the close of plaintiff's case on the ground that no dentist testified that pulling a tooth where there is a swollen condition was improper medical practice; and, on the contrary, Dr. Watts' professional testimony was that he had pursued the proper practice. The complaint is specific as to negligence in pulling a tooth that was abscessed, but in a general way it charges negligence in the manner in which the tooth was extracted, which allegation seems to have been overlooked by the court.

In reference to the defendant's inferential admission that in a "bad case" where there is apparent infection, treatment for it should be administered before the tooth is pulled, we note Goodwin v. Hertzberg, 91 U.S.App.D.C. 385, 201 F.2d 204, 205. It was a suit for malpractice against a sur-

geon in performing an operation in which it was necessary to use care not to perforate the patient's urethra. The defendant had said on the witness stand, " 'I must have made the opening myself in the process of operation. I am only human.' " In holding that it was error for the trial court to have directed a verdict for the defendant because of insufficient evidence of his negligence, the court said:

"It is immaterial that no expert testified that appellee acted negligently. 'Malpractice is hard to prove. The physician has all of the advantage of position. * * * What therefore might be slight evidence when there is no such advantage, as in ordinary negligence cases, takes on greater weight in malpractice suits. * * * Generally speaking, direct and positive testimony to specific acts of negligence is not required * * *.' Christie v. Callahan, 75 U.S.App.D.C. 133, 135, 136, 147, 124 F.2d 825, 827, 828, 839. In surgical cases especially there are ' " * * * many instances where the facts alone prove the negligence, and where it is unnecessary to have the opinions of persons skilled in the particular science to show unskillful and negligent treatment." ' Byrom v. Eastern Dispensary & Casualty Hospital, 78 U.S.App.D.C. 42, 43, 136 F.2d 278, 279."

The dentist who had treated the plaintiff postoperatively, Dr. Carter, was rather evasive when interrogated about the defendant's services and professional technique. Dr. Shreve was not called as a witness.

■ Several of our opinions contain the broad statement that "in malpractice suits against dentists such proof can only be established by the testimony of experts skilled in the dental profession. They are the only witnesses who are qualified to testify as to whether there was negligence in the method of treatment." Donoho v. Rawleigh, 230 Ky. 11, 18 S.W.2d 311, 313, 69 A.L.R. 1135. This rule is in accord with the weight of authority generally where the defendant's use of suitable professional skill is a subject calling for expert testimony only, or the question to be determined is strictly within special and technical knowledge of the profession and not within the knowledge of the average layman. But the force of the rule is broken when the act or omission comes within the realm of common knowledge. There is a limitation on the rule that expert testimony is essential to support a cause of action for malpractice where the common knowledge or experience of laymen is extensive enough to recognize or to infer negligence from the facts. This is recognized in 41 Am.Jur., Physicians and Surgeons, § 129, and 70 C.J.S., Physicians and Surgeons, § 62, p. 1009, as well as in the Donoho case, supra, and other opinions of like tenor, a recent one being Merker v. Wood, 307 Ky. 331, 210 S.W.2d 946. See Hickerson v. Neely, 54 S.W. 842, 21 Ky.Law Rep. 1257, where the condition in which a doctor left a fractured ankle showed negligence and expert testimony was held to be unnecessary. Numerous cases of this character are collated in Notes, 141 A.L.R. 19. So the application of the broad statement must be confined to the peculiar facts and special circumstances of the cases in which it was made. The rule that expert testimony is indispensable ought not to be too strictly applied, although ordinarily laymen are not qualified to say that a doctor was negligent or was not negligent. But the notorious unwillingness of members of the medical profession to testify against one another may impose an insuperable handicap upon a plaintiff who cannot obtain professional proof. Prosser on Torts, Sec. 42, p. 210.

Some features of the case at bar may be regarded as requiring opinion evidence because they are exclusively within the domain of an expert. However, the fundamental fact is that this dentist only partially extracted the plaintiff's tooth and left a fragment in the socket. He did not complete the operation. Although the sequence of events indicated something was wrong, the dentist callously abandoned his patient in a condition of suffering.

It may be conceded that extracting an impacted tooth—or any tooth for that matter—requires technical skill and that sometimes there is an unforeseeable, unfortunate result even though proper care has been exercised by the dentist, and only professional witnesses are competent to testify concerning the duty and alleged breach. Such was the case of Donoho v. Rawleigh, supra, 230 Ky. 11, 18 S.W.2d 311, 69 A.L.R. 1135; second appeal, Rawleigh v. Donoho, 238 Ky. 480, 38 S.W.2d 227.

■ It is within the realm of common knowledge of laymen that to leave a part of a broken tooth in the socket, which was easily discovered by another dentist, is malpractice unless proof tending to excuse the act is introduced. This is knowledge that is not exclusively within the province of practitioners of the dental profession. A juror needs no scientific enlightenment to see at once that leaving a portion of a broken tooth in the socket can be accounted for on no other theory than negligence. Such act is somewhat analogous to leaving a foreign substance or object in a patient's body during a surgical operation. The thing speaks for itself, or, in the lawyer's language, the rule of res ipsa loquitur generally applies in such cases. Indeed, this court has held that leaving a gauze pad within the body of the patient is negligence per se and the fact that good surgeons sometimes do so is no excuse, because every man is responsible for the legal consequences of his own careless act. Samuels v. Willis, 133 Ky. 459, 118 S.W. 339, 19 Ann.Cas. 188; Barnett's Adm'r v. Brand, 165 Ky. 616, 177 S.W. 461.

In the case of Perrin v. Rodriguez, La.App., 153 So. 555, a dentist had left portions of roots of teeth in the sockets and allowed them to remain. It was conceded "that it is negligence for a dentist who removes a tooth to allow any part to remain in the mouth of the patient."

As reported in 129 A.L.R. 113, in a British Columbia case, Drinnen v. Douglas, 43 B.C. 352, 2 D.L.R. 606, where a dentist had broken off the tops of several teeth and then left his patient to his physician, the court observed:

"The doctrine of common sense should have restrained what appears to have been an uncontrolled impulse to adopt a 'high-rigging' method of breaking the teeth in this wholesale fashion. Indeed, may I not go so far as to hold that in a case of this sort the very act speaks for itself obviating the necessity of the court invoking the adventitious aid of any practitioner of this or that school in determining its character or the painful experience of the patient."

■■ In the case at bar there is added to the proof of a piece of the plaintiff's tooth being left in the socket, the element of continued treatment with little or no effort on the part of the defendant to discover the cause and relieve his patient. In Tanner v. Sanders, 247 Ky. 90, 56 S.W.2d 718, 719, we again recognized the principle that dentists are subject to the rules that govern physicians and surgeons generally and that there may be legal liability for postoperative negligence by a dentist. A surgeon owes the same duty of care and skill in the treatment of his patient after an operation as in performing it unless the terms of his employment otherwise limit his services or the patient refuses them. "This duty of due care may also require a surgeon to use X-rays after an operation or resort to other means of determining the advisability of a supplementary operation or other special treatment to effect a cure or correct conditions which have developed after the operation or treatment, although in some instances the failure of a physician or surgeon to make an examination by X-rays after an operation or other treatment has been held as a matter of law not to constitute negligence under the circumstances of a particular case." 41 Am.Jur., Sec. 98. See Baute v. Haynes, 104 S.W. 272, 31 Ky.Law Rep. 876, 12 L.R.A.,N.S., 752; Merker v. Wood, 307 Ky. 331, 210 S.W.2d 946.

■ In this day and time the use of X-ray apparatus by competent dentists and

what its use ordinarily reveals are so well known as to be within common knowledge and frequent experience of laymen. See Annotations, 115 A.L.R. 298, 162 A.L.R. 1925. The defendant had such a machine and had used it before the operation, but failed to use it afterward in diagnosing and attempting to remedy the condition which was so manifestly wrong. When another dentist did use an X-ray, he discovered the fragment of tooth. In the circumstances shown, the jury could well believe that that was a factor to be taken into account on the overall question of postoperative negligence without having an expert tell them so.

The judgment is reversed for proceedings consistent with this opinion.

Judgment reversed.