## Miller, et al. v. Blackburn, et al.

(Decided May 18, 1916.)

### Appeal from Warren Circuit Court.

1. Pleading—Amendment—Discretion of Court.—Refusal to permit second amended petition to be filed making immaterial change in description of injury as set out in petition as theretofore amended, held not to be abuse of the sound discretion of trial court.

2. Physicians and Surgeons—Liability for Negligence or Malpractice. —Whether or not a physician or surgeon must continue attentions after an operation, if left to his discretion, depends upon the necessity therefor under the nature and circumstances of each particular case as appears to him in the exercise of reasonable care and skill.

3.  Physicians and Surgeons—Liability for Negligence or Malpractice.
    —Failure to effect a cure is no evidence of want of proper care,
    skill and diligence upon the part of a physician; and to support
    a charge of malpractice it must be shown affirmatively that the
    physician was unskillful or negligent and that his want of care or
    skill caused injury to the plaintiff.

BRADBURN & BASHAM for appellants.

SIMS, RODES & SIMS for appellees.

OPINION OF THE COURT BY JUDGE CLARKE.—Affirming.

Mrs. Annie Miller and her husband, J. J. Miller, brought this suit February 5, 1914, against appellees, Drs. Blackburn and Francis for malpractice. alleging that in treating her, as physicians, in September, 1911, they broke or injured the neck or head of the femur by negligently manipulating her leg causing it to be shortened about three inches, and to turn outward, as the result of which the use of her leg was nearly destroyed, and she is compelled to walk on a crutch.

At the time of the operation she lived at Richardsville in Warren county, Kentucky, about ten miles from Bowling Green where Dr. Blackburn resided. Pursuant to an employment by plaintiff's husband Dr. Blackburn on September 7, 1911, went to her home and made an examination of Mrs. Miller. As a result of this examination, which seems to have been a very thorough one, Dr. Blackburn pronounced that she was suffering from a chronic case of sciatica, and he discovered no other trouble of any kind. Mrs. Miller was lying in bed with her right leg stiff at both the hip and knee joints stretched straight out with the toes upright. There is no question made but that Mrs. Miller was suffering from chronic sciatica with which she had been afflicted for nearly a year, and that she had been confined to her bed as a result thereof for about three months prior to the examination, during all of which time she had the attention of a physician, Dr. Francis, upon but two occasions when her suffering had been so intense as to require the administration of a narcotic, and upon both of these occasions Dr. Francis had been informed by her husband that if his services were needed further he would be notified.

After making the examination Dr. Blackburn informed Mrs. Miller and her husband that, in his judgment, an operation would be necessary to break up the adhesions

along the sciatic nerve and in the hip and knee joints, but before resorting to an operation he would try medicinal treatment which he prescribed, with instructions that they should let him know the result in ten days. After giving this treatment for ten days Mr. Miller reported to Dr. Blackburn that her trouble was not yielding to the treatment, and it was then arranged between the husband and Dr. Blackburn for the latter to perform the operation, and upon his suggestion Dr. Francis was employed by Mr. Miller to administer the anaesthetic. On September 18, 1911, Dr. Blackburn went to the home of appellants, taking Dr. Francis with him, and after the anaesthetic had been administered by Dr. Francis, Dr. Blackburn performed the operation in the presence of Mrs. Hill and Mrs. Whalen, by manipulating the leg and flexing the joints in order to break up the adhesions at the hip and knee joint and along the sciatic nerve.

Dr. Blackburn in his testimony described the manner in which he performed this operation, about which he is not contradicted, and all of the evidence of the physicians introduced on both sides was that the operation as performed was proper as indicated by the existing stage of the disease. Before beginning the operation Dr. Blackburn had informed the ladies in attendance that if they would listen they would hear a popping or cracking noise as the adhesions were broken up, and during the operation he called their attention to such a noise, which was noticed by all of them.

Dr. Blackburn and Dr. Francis remained in the house until Mrs. Miller regained consciousness, and when leaving Dr. Blackburn left instructions that the affected leg should be manipulated each day in much the same way he had done in order to prevent the adhesions from forming again.

During the next day Dr. Francis, paid, what he termed, a social call upon Mrs. Miller, and for which no charge was made, to see how she was getting along, and except for this call neither Dr. Blackburn nor Dr. Francis ever saw the patient professionally again, nor was either of them or any other physician ever called to see Mrs. Miller until January, 1913, when she had gotten well and then she consulted another physician, presumably for the purpose of ascertaining the cause of her crippled condition.

After the operation the leg was manipulated as directed for about six weeks, when the manipulations were

discontinued because of the unbearable pain incident thereto. Mrs. Miller, was confined to her bed for ten months after the operation when an abcess formed at the hip joint from which pus was discharged for a period of five months. After this discharge had ceased, as Mrs. Miller testifies, she was entirely well except for her crippled condition, and was in better health than she had been at any time since the disease first manifested itself.

All of the physicians who testified in the case, including Dr. Victor Meddis of Louisville, who was introduced by appellants, stated that the present condition of Mrs. Miller's leg is the result of a tubercular condition of the upper end of the femur, which destroyed a portion of the bone permitting the muscles of the leg and hip to shorten the leg to the extent that the bone was destroyed by the tuberculosis.

At the conclusion of appellants' testimony, a motion by appellees for a peremptory instruction was overruled, which motion was renewed at the conclusion of all the evidence, and then sustained by the court, and a judgment entered dismissing appellant's petition.

As reasons for reversal of this judgment, appellants present three propositions: (1) That appellants second amended petition should have been filed. (2) That the court should have instructed the jury that if the relationship of physician and patient had been created, it was the duty of appellees to have rendered such continued treatment after the operation as the necessity of the case required. (3) That there was some evidence tending to show negligence in the operation, and that a peremptory therefore was improper.

1. Upon the first proposition appellants cite numerous authorities in support of the well recognized rule that it is within the discretion of the trial court at any time in furtherance of justice and upon such terms as may be proper to permit amended pleadings to be filed which do not change substantially the cause of action or defense, and that an abuse of this discretion may be grounds for reversal. There can be no question about the correctness of this proposition of law, but in the case at bar the action of the trial court does not seem to have been an abuse of this discretion.

In the original petition the negligence alleged was that in performing the operation the leg was so negligently manipulated that the head of the femur was either

fractured or dislocated, but which was not known to appellants. In the first amended petition which was offered and filed, appellants stated that the allegation in their petition that the femur was broken or dislocated in the hip joint was incorrect, and that in fact the defendant, in endeavoring to bend her limb in the hip joint, unskilfully, negligently and unprofessionally injured her limb in the hip joint.

In the second amended petition offered by appellants, but not permitted to be filed, they alleged that the negligence of the defendants consisted in breaking the neck of the femur. The allegations of the second amendment were immaterial as they in no wise changed or enlarged appellants cause of action as stated in the original and first amended petition. The negligence relied upon in the first amended petition was the injury to the bone of her leg at the hip joint which was ample to cover and to include all that was asserted in the second amendment; besides, appellants were permitted to introduce all the evidence offered upon any kind of an injury, including a fracture, of the femur at the hip joint, and the peremptory instruction was given not because of any variance in the proof from the pleading, but because of the court's conviction that she had failed to make out a case in that she had failed to prove any injury, including a fracture, caused by negligence upon the part of appellees in performing the operation.

2. Upon the second proposition Dr. Blackburn testifies that he was employed for but one trip; that after the operation he told appellants to notify him if needed, and that appellants did not notify him of the necessity for a subsequent trip or request him to see Mrs. Miller again. This testimony is not contradicted. Dr. Blackburn explained to appellants that the operation was a simple one; that she ought to completely recover from the operation in a short time, and there is nothing in the evidence to show that he ought to have anticipated the necessity for again seeing the appellant. They did not notify him that the operation had not been entirely successful, or that there were any untoward results. It was only about ten miles from the home of appellants to that of Dr. Blackburn, and there were no doubt telephones within easy reach. Taking into consideration the nature of this operation, Dr. Blackburn's uncontradicted testimony that he was employed for but one trip, with an agreement what

his fee should be in case other visits should become necessary; that he told them to notify him if needed, and the failure upon the part of Mr. and Mrs. Miller to notify him, although they now say the hip was inflamed and Mrs. Miller had fever the next day, we do not think this case comes within the well established and humane rule that a doctor may not after accepting an employment abandon a patient without reasonable opportunity to procure another physician. Authorities cited by appellants upon this proposition are all of them where from the nature of the operation or treatment and attending circumstances it was held to be incumbent upon the physician in the exercise of ordinary care and skill to have recognized the necessity for a continuance of his attentions. It is unquestionably the duty of a physician, if the matter is left to his discretion, to exercise both care and skill in the discontinuance, as well as in the performance, of his services, but the relationship is contractual, and the duties of care and skill are implied from the contract and the relationship may be terminated by assent after which no implied duty can attach. Lawson v. Conway, 18 L. R. A. 626.

Here all of the evidence is to the effect and conclusive that the services of Dr. Blackburn were concluded by assent when the operation was performed. No other conclusion could be drawn from the testimony of Dr. Blackburn and the conduct of appellants in not calling him; but however that may be there is no evidence that the deplorable condition in which Mrs. Miller undoubtedly is now, is attributable in any degree to the failure of Dr. Blackburn to go to see her again after the operation, even if conditions had been such as to create an implied contract for him to do so, as will more clearly appear in our discussion of the evidence under the third proposition.

3. The third and last proposition relied upon for reversal is that the peremptory instruction was erroneously given. There is absolutely no contrariety in the evidence that Mrs. Miller when Dr. Blackburn was called to see her was suffering from neglected chronic sciatica; that Dr. Blackburn's diagnosis was correct; that the operation as performed was the approved operation indicated by Mrs. Miller's condition; that her present condition is the result of tuberculosis in the hip joint; and that although she was in bed for fifteen months following this operation no physician was consulted or called to

see her, and there is no evidence at all as to what was the real cause of this prolonged illness except the fact that it followed the operation, and the testimony of the expert witnesses that her present condition is due to tuberculosis of the hip joint. There is no evidence that the operation was not the proper one, nor of any negligence in the way in which it was performed, so that unless we can apply to this case the doctrine of *res ipsa loquitur,* there was no evidence of any negligence upon the part of appellees that would have warranted a submission to the jury. There is no testimony in the record more favorable to appellants than the testimony of Dr. Meddis who was introduced by them as an expert, and he testified positively, as did the other physicians, that her present condition is the result of the tubercular condition of the hip joint as determined by him from an examination by X-ray. He also testifies that if there had been a fracture at the neck of the femur at the time of the operation it would have been evidenced by an immedate shortening of the leg and eversion of the foot, but that the latter would have resulted also from a breaking up of the adhesions, and that the rotation of the foot outward alone after the operation did not indicate a fracture any more than a reduction of the adhesions. That the foot did turn outward immediately after the operation is established by the evidence, but there is no evidence whatever of an immediate shortening of the leg; so that upon the only theory advanced by appellants that could have indicated a fracture in the operation, the evidence sustains but one of the two necessary elements; and there is no other evidence in the record whatever even tending to show a fracture.

It is also contended for appellant that it was negligence upon the part of Dr. Blackburn to have failed to discover in his examination the existence of the tubercular condition of the hip joint before he attempted the operation, but this contention is not sustained by the evidence, nor is there any evidence whatever that any such condition existed in the hip at that time. Besides, it is shown in the evidence by the medical experts without contradiction that even if the tubercular condition had existed and had been discovered, that her condition from sciatica was such as not only to warrant, but even to demand the risk of the operation that was performed.

The whole argument of counsel for appellants is based upon the assumption that the femur was broken in the operation and that tuberculosis existed in the hip joint at the time, neither of which is supported by any proof whatever. There is absolutely no evidence in this case, as we read it, that proves any negligence in either of appellees. Certainly not upon the part of Dr. Francis because he was simply employed to administer the anaesthetic, had no part in the diagnosis or operation, and was in no wise responsible for the results. And, of course, the doctrine of *res ipsa loquitur* can have no place in a case such as this, as the mere failure to effect a cure does not raise the presumption of want of proper care, skill and diligence upon the part of a physician, as was said in the case of Ewing v. Goode, 78 Fed. Rep. 442, Judge Taft writing the opinion:

"Before the plaintiff can recover, she must show by affirmative evidence: 1st. That defendant was unskillful or negligent; 2nd. That his want of skill or care caused injury to the plaintiff. If either element is lacking in her proof, she has presented no case for the consideration of the jury. The naked facts that defendant performed operations upon her eye, and that pain followed, and that subsequently the eye was in such a bad condition that it had to be extracted, established neither the neglect and unskillfulness of the treatment nor the causal connection between it and the unfortunate event. A physician is not a warrantor of cures. If the maxim *res ipsa loquitur,* were applicable to a case like this, and a failure to cure were held to be evidence however slight of negligence on the part of the physician or surgeon causing the bad result, few would be courageous enough to practice the healing art, for they would have to assume financial liability for nearly all the 'ills that flesh is heir to.' "

To the same effect is 30 Cyc. 1584.

Appellants having failed, as we are convinced after a careful consideration of the record, to show any want of care or skill upon the part of either of appellees as the cause of her present condition, we are of the opinion that the peremptory instruction was properly given, and therefore the judgment is affirmed.