## Prewitt v. Higgins.

(Decided November 26, 1929.)

FAUREST & FAUREST for appellant.

HAYNES CARTER for appellee.

OPINION OF THE COURT BY JUDGE WILLIS—Reversing.

William Higgins instituted this action against Dr. J. V. Prewitt to recover damages for an injury to his arm, caused, as he alleges, by the intravenous injection of neosalvarsan. A trial by jury resulted in a verdict for $750 in favor of Higgins upon which judgment was rendered. A new trial was requested and refused, resulting in this appeal by the defendant. A number of questions are presented by the record and urged in the briefs, but our conclusion upon one of them renders unnecessary consideration of the others, and they are accordingly reserved.

At the conclusion of the testimony offered by the plaintiff, the defendant requested the court to direct a verdict for him. The request was refused, and the ruling is assailed as erroneous. Its correctness depends upon whether there was any evidence produced by the plaintiff tending to sustain the cause of action alleged by him. Hanners v. Salmon, 216 Ky. 584, 288 S. W. 307; Leadingham v. Hillman, 224 Ky. 177, 5 S. W. (2d) 1044; Powell v. Galloway, 229 Ky. 37, 16 S. W. (2d) 489. The case for the plaintiff, as the petition discloses, was rested upon two grounds. It was claimed that the doctor was negligent in the selection of the substance and in the introduction of it into his blood. The exact language of the petition is: "that at the time plaintiff was suffering from severe headaches, and at his request, the defendant undertook to relieve him from such suffering, and in the treatment administered, the defendant injected some fluid or other substance into the right arm of plaintiff, and that by reason of the negligence and carelessness of the defendant in making said injection, and by reason of the negligence and carelessness of the defendant in using said fluid or substance, which was not the proper

remedy for his said headache, the plaintiff's arm was caused to swell and become inflamed, and to become infected." If the petition intended to charge that there was a lack of care in selecting the particular portion of the fluid used in treating plaintiff, there was no evidence whatever to sustain the charge. It is not shown how, or when, or where, the neosalvarsan which was administered to the patient was selected or obtained. Neither is it shown that the medicine was in any respect deficient. If the petition meant to charge, as we think it did, that the doctor was negligent in diagnosing the case and in deciding to administer neosalvarsan, there is likewise a failure of the proof to sustain that charge.

The plaintiff had been suffering for weeks with an incessant headache, and consulted the doctor for a diagnosis and treatment. The doctor proceeded with great care to ascertain the source of the patient's suffering. He first caused to be made an examination of the urine, which disclosed some sinister symptoms, but a later analysis demonstrated that the condition had cleared, and the trouble from which the patient suffered was not caused by any infection of the kidneys. A blood pressure test was taken, and an oculist was consulted to ascertain whether glasses would afford relief. As these experiments failed to disclose the cause of the suffering, the doctor took Higgins to a dental specialist. Ulcers in the patient's mouth indicated that the suffering might be from that source. The dentist found and verified by a bacteriological test that the infectious condition of the mouth was caused by a disease called "trench mouth." He recommended the neosalvarsan treatment. There is no intimation that the specialist was not competent or that his advice was not correct. It is not apparent how Dr. Prewitt could have been more careful in ascertaining the causes from which his patient was suffering or the proper remedy to be employed for his relief. Feeling uncertain of his own judgment, he utilized the services of experts in the various lines to establish unerringly the accuracy of his diagnosis. The proof utterly fails to sustain the allegations of negligence respecting the diagnosis of the disease, or the determination of the doctor to use the particular medicine. It appears from the testimony of Higgins that the doctor proceeded with equal care in administering the treatment. He cleaned the arm, affixed the ligature, sterilized the needle, and carefully inserted it into the vein. The doctor did pre-

cisely the things necessary to be done in administering the medicine. The description by the plaintiff's physician of the proper procedure to introduce the drug into the vein corresponded with exactness to the steps taken by Dr. Prewitt as detailed by the plaintiff.

There was no direct testimony of any lack of care on the part of the doctor in doing the work. But it is insisted that the circumstances were such that negligence could be inferred. Appellant in his brief says: "The plaintiff, of course, was unable to show whether the condition of his arm was brought about by the negligent manner of inserting the fluid in the arm, that is in permitting an excessive amount to be thrown into the tissues instead of the vein, or whether he was negligent in sterilizing his instruments to avoid infection. Undoubtedly one or the other brought about the condition of his arm." In other words, the plaintiff's arm was well before the operation and afterwards was sore and caused him much suffering. Dr. Shacklett was consulted nine days after the treatment was given and found the arm in such condition that it was necessary to lance it several times. The doctrine of res ipsa loquitur is not ordinarily applicable in a case of this character. Miller v. Blackburn, 170 Ky. 263, 185 S. W. 864; Donoho v. Rawleigh, 230 Ky. 11, 18 S. W. (2d) 311; Sweeney v. Erving, 35 App. D. C. 57, 43 L. R. A. (N. S.) 734, affirmed 228 U. S. 233, 33 S. Ct. 416, 57 L. Ed. 815, Ann. Cas. 1914D, 905.

Negligence on the part of a physician may not be inferred from the effect his medicine may have on the patient. The bad result may have been caused by inherent bodily conditions of the patient, or by the subsequent use of the injured arm, or by something else the doctor could not avoid or anticipate. It does not, of itself, prove negligence on the part of the physician. A doctor is not an insurer of results. The degree of care required of him is that of an ordinarily skillful and prudent doctor in similar localities. In order to make out a case of malpractice against a doctor, it is essential that the evidence show unskillful or negligent practice, proximately resulting in the injury complained of in the petition. 30 Cyc. 1584; Ewing v. Goode (C. C.) 78 F. 442; Miller v. Blackburn, 170 Ky. 263, 185 S. W. 864. Neosalvarsan is a powerful and dangerous drug, and, it appears from the evidence, may cause painful and even serious injury (see Ocean Accident & Guarantee Corporation v. Heavrin, 21 S. W. (2d) 435, decided October 29, 1929), but its

use as a treatment for trench mouth is recognized, approved, and practiced by the medical profession. The fact that an injury results from its use does not necessarily show negligence either in selecting or administering the treatment. Miller v. Blackburn, supra; Sweeney v. Erving, supra. Cf. Frisk v. Cannon, 110 Minn. 438, 126 N. W. 67, 28 L. R. A. (N. S.) 262. Injury may result from the use of the drug even when the doctor has proceeded with the utmost care and skill. It is necessary, therefore, in order to make out a case, that something more be shown than mere injury by the drug. 21 R. C. L. 406, Compare Burk v. Foster, 114 Ky. 20, 69 S. W. 1096, 24 Ky. Law Rep. 791, 59 L. R. A. 277, 1 Ann. Cas. 304.

Our conclusion upon the evidence introduced by plaintiff is that it was insufficient to make out a case of negligence, or injury resulting therefrom, and the court should have instructed the jury to return a verdict for the defendant.

The judgment is reversed for a new trial not inconsistent with this opinion.