# Hazard Hospital Co. et al. v. Combs' Adm'r.
(Decided Jan. 24, 1936).
(As Extended on Denial of Rehearing March 27, 1936).

CRAFT & STANFILL and L. R. CURTIS for appellants.

NAPIER & EBLEN for appellee.

OPINION OF THE COURT BY JUDGE STITES—Reversing.

On August 28, 1933, appellee's decedent, Everette Combs, a boy ten years of age, was taken to the Hazard Hospital for a tonsillectomy. The child was in apparently good health at the time of the operation. The operation was performed by the appellant Dr. B. M. Brown, an eye, ear, nose and throat specialist, assisted by Dr. J. P. Boggs, who administered the anesthetic. There is no dispute but that the operation was performed in the usual and customary manner. Following the operation, the child was taken from the operating room to another room in the hospital and placed under the care of a trained nurse. Some time, possibly forty-five minutes or an hour after the operation, the child came out from under the influence of the anesthetic. His mother testified that the first words he said were: "Mother, the doctor pulled one of my teeth." She says that she then examined the child's mouth and found that a stomach tooth was missing and that the gum was bleeding as if the tooth had been recently pulled. The child's father, who was also present, testifies to the same effect. The trained nurse, who was the only other person in the room, denies that the

child made the statement claimed or that any one discovered a tooth missing.

The day following the operation, the child was removed to its home, but it became very ill that evening, and the family physician was called. The child was running a temperature, and his condition was diagnosed as resulting from bronchial pneumonia in both lungs. At the end of three or four weeks he was well enough to attend school for a period of ten days, but the coughing continued, and at the end of that time his temperature rose again. Dr. Martin Palmer, the family physician, returned the child to the Hazard Hospital on November 7, 1933, for an X-ray examination. Dr. J. E. Hagan took an X-ray picture of the child's lung on November 8, 1933. He diagnosed the trouble as acute tuberculosis, basing his conclusion upon the appearance of about twelve spots in the picture, which he took to be calcified glands. The patient was returned to his home, and in the early part of December the father reported to Dr. Hagan that on the 1st of December the child had coughed up a tooth, and he wondered whether the large spot on the right lung, which all the doctors had diagnosed as a calcified gland, might not have been the tooth. The father says Dr. Hagan then examined the X-ray and said: "Yes, here it is. I thought he had tuberculosis, but now we all know what is wrong." Dr. Brown did not hear this conversation, but came into the room a little while later, and, when Dr. Hagan told him what the father had said, Dr. Brown exclaimed: "It is possible that something like that could have happened." It is not claimed that either of the parents gave a history of the missing tooth to any of the physicians prior to this conversation in December. The child died on December 18, 1933.

All of the medical witnesses state that ether pneumonia frequently follows the administration of an anesthetic and that mucous or other foreign materials are frequently breathed into the lung following a tonsil operation, that these foreign bodies, if infected, may cause abscesses in the lung, and that the abscesses in the case at bar may have been due to the presence of the tooth in the lung or may have been due to the aspiration of blood and mucous, regardless of the tooth.

Dr. Brown testified positively that the tooth was

not dislodged during the operation; that the mouth gag used was of standard make and was handled in the usual and ordinary manner, and that no teeth were missing after the operation. He is corroborated by Dr. Boggs and by the surgical nurse. There is no evidence showing that anything could have been done to prevent the tooth from falling into the windpipe or that this was a hazard reasonably to be anticipated. Dr. Brown testified that children, while in a semiconscious state, frequently grit their teeth, and even put their fingers in their mouths. "Their throat hurts and they are trying to find out what the hurting is. That (the loss of the tooth) could possibly have occurred after the child went back to the room. All I am positive is that it did not occur while he was in the operating room."

Two specific acts of negligence are relied upon in the petition: (1) That the defendants "unskillfully, unprofessionally, negligently, and through gross carelessness and negligence while performing said operation, knocked one of decedent's lower teeth out, and it passed into decedent's right lung at said time"; and (2) that the defendants discovered the tooth in decedent's lung in time to have removed it and to have saved his life, but negligently failed to do so.

The second act of negligence relied on is plainly not tenable under the proof adduced at the trial. The X-ray picture on which the plaintiff relies to show discovery of the tooth in the child's lung was interpreted by all of the doctors as presenting a tubercular condition. The testimony indicates that there were twelve spots on the lungs, evidently caused by calcified glands, and that, while one of these spots might have been the tooth, considering its shape and shadow on the plate, even this is doubtful. The most that could be said is that the physicians who undertook to interpret the plate were mistaken in their judgment to this extent. It is not shown that they were not exercising their best judgment in concluding as they did, nor is it by any means clear that their judgment was not actually the correct interpretation of the condition presented. It is conceded that no history of the missing tooth was given to the doctors prior to the time when it is claimed that the child coughed up its tooth, and the numerous spots

on both lungs could hardly be diagnosed as arising from one missing tooth. An error of judgment is not negligence. Stacy v. Williams, 253 Ky. 353, 69 S. W. (2d) 697.

The only other basis for recovery lies in the charge that the defendants negligently knocked out one of the decedent's lower teeth during the operation. Negligence will not be presumed, but can only be inferred from facts established. The record is devoid of any facts justifying an inference that this child's tooth was knocked out during the operation. The only competent testimony on the subject is found in the statements of the child's father and mother that some forty-five minutes after the operation they examined the child's mouth and found a tooth missing and the gum bleeding as if the tooth recently had been pulled, and that three months later the child coughed up a tooth.. Accepting their testimony to its full extent, we are still left entirely to speculation as to whether the tooth was knocked out during the operation, and whether this occurred as a result of want of care or was something not reasonably to be foreseen. Even the X-ray picture does no more than show a light spot which might be a tooth. Plainly, these facts are not sufficient to call for an application of the rule of res ipsa loquitur. Proof of the circumstances and result still leaves the cause entirely to conjecture. Loebig's Guardian v. Coca-Cola Bottling Co., 259 Ky. 124, 81 S. W. (2d) 910; Stacy v. Williams, supra; Prewitt v. Higgins, 231 Ky. 678, 22 S. W. (2d) 115; Donoho v. Rawleigh, 230 Ky. 11, 18 S. W. (2d) 311, 69 A. L. R. 1135; Miller v. Blackburn, 170 Ky. 263, 185 S. W. 864. Even if the rule of res ipsa loquitur should be applied, it is difficult to see how, under any circumstances, it could supply the absence of proof of the specific negligence charged in this case.

Assuming that the tooth was actually in the child's lung, there is nothing in the record to show that it got there as a result of being knocked out during the operation or that it was knocked out negligently or, indeed, that it did not simply fall out of its socket. The burden was on the plaintiff to establish that the injury complained of resulted proximately from want of care. Prewitt v. Higgins, supra. Proof of a bare possibil-

ity that the injury might so have resulted plainly does not meet this burden. Furthermore, Dr. Brown categorically denies that the tooth was knocked out, and in this he is substantiated by the positive testimony of the anesthetist and the surgical nurse. No other acts of negligence are relied on than those set out above, nor do we find any evidence of other negligence in the testimony. The trial court should have peremptorily instructed the jury to return a verdict for the defendants.

Judgment reversed for proceedings consistent herewith.