## No. 16,886.

### McBrayer *v.* Zordel.

(257 P. [2d] 962)

Decided May 4, 1953.   Rehearing denied May 25, 1953.

Mr. William L. Lloyd, for plaintiff in error.

Mr. JOHN A. McCARTHY, for defendant in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

PLAINTIFF in error was one of the defendants in the trial of this case which started May 21, 1951, at which defendant in error, a minor, appearing by her father and next friend, recovered a judgment for $5,000 on a jury's verdict upon a complaint for damages against both defendants for negligence in a tonsilectomy, which negligence, according to the allegations, was that four of plaintiff's upper front teeth were knocked out by the defendants at the time of the operation, and that the loss of these teeth interfered with the normal growth of her permanent teeth thereafter. Plaintiff was about four years old and the teeth that were displaced during the operation were her so-called "baby teeth."

This defendant, Dr. McBrayer, was engaged by the surgeon, Dr. Tipple, to attend the operation and administer the anesthetic. The jury returned a verdict in favor of Dr. Tipple, but found the issues in favor of plaintiff against Dr. McBrayer. Motions for new trial and motion for judgment non obstante verdicto were duly presented and overruled. Motion for directed verdict at the close of plaintiff's case and at the close of all the evidence also was overruled. Counsel for defendant McBrayer, now before this court, contend that there is no evidence to support the verdict and judgment; that, on the contrary, the preponderance of the evidence conclusively shows this defendant was not guilty of negligence; that the trial court erred in permitting plaintiff's counsel to cross-examine his own witnesses; in permitting plaintiff's counsel to state, in the presence of the jury, that this was a case against "doctors"; that the court erred in refusing to instruct the jury that only nominal damages, if

440

any, could be awarded plaintiff under the evidence; that the excessiveness of the verdict discloses passion and prejudice on the part of the jury; and finally, that the liability, if any, was joint of the doctors and a verdict exonerating one and holding the other liable was contrary to both the law and the evidence.

■■ We have examined the entire record and agree with the contention that the evidence does not support the jury's finding, or any finding of damage due to any negligence on the part of either of the defendants; and further, the evidence is most convincing that this defendant used ordinary and reasonable care and followed the accepted procedure in such cases. Counsel for plaintiff in error contends that it was error on the part of the trial court to permit plaintiff's counsel to cross-examine his own witnesses. These witnesses were two dentists called by plaintiff; their testimony was decidedly favorable to defendants; and counsel stated that he was surprised and asked leave of court to cross-examine his own witnesses. Counsel for defendant failed to make any objection thereto and therefore is not now in position to complain. Ordinarily, a party is not permitted to cross-examine his own witnesses; however, when it develops that a witness is either hostile or testifying adversely, cross-examination is permissible, and rests in the sound discretion of the trial court, because the right to such cross-examination is not absolute. As now admitted by counsel for plaintiff in error, the cross-examination of which complaint is made failed to change the testimony of the witnesses, which was favorable to defendant, now plaintiff in error, and therefore defendant suffered no prejudice therefrom.

The testimony discloses that plaintiff, a minor, was about four years old; was taken to the Corwin Hospital in Pueblo, Colorado, on May 3, 1948, where Dr. Albert M. Tipple, a physician and surgeon, performed a tonsilectomy; he was assisted by plaintiff in error, Dr. Benjamin B. McBrayer, as the anesthetist; during the opera-

tion, in which a Crow-Davis mouth gag, an approved device for holding the mouth open in such operations, was used, its use being a part of the standard practice in such operations for many years, four of the child's upper front teeth were displaced and upon discovery, were removed by the fingers of the surgeon. It is alleged in the complaint that this resulted in a permanent facial disfigurement and caused past, present and future bodily and mental pain. Plaintiff's mother testified that just before the operation she ran her fingers over the child's teeth and they were not loose, but sound. The surgeon also testified that it was a part of the usual practice, which he followed, making the same kind of an examination prior to placing the child under an anesthetic, because frequently in such operations, on children of that age, teeth were dislodged and unless removed might be inhaled by the child and get into the lungs, bringing on serious consequences. The surgeon and the anesthetist testified that the gag was placed in the child's mouth and the pressure therefrom was always on the front upper teeth; that it was customary for the anesthetist in attendance to look after the mouth gag and administer the anesthetic while the surgeon was removing the tonsils. During the course of the operation, the surgeon noticed the front teeth were loosened and dangling from the gum and he removed them with his fingers. Plaintiff's mother and father testified that immediately after the operation the doctors seemed to place the blame on one another, which both attending physicians deny.

To support the allegations of the complaint, there was evidence that there was facial disfigurement; that the child had suffered a change in her behavior and personality; and that as a result of these four teeth being displaced, there was serious interference with the development of the mouth and teeth structure, which caused serious, permanent damage. Plaintiff called a number of lay witnesses, neighbors and friends of the family, who testified along the general line intended. It was

considerable time after the operation, in some instances two years thereafter, that the child was taken to other dentists, eye, ear, nose and throat specialists and dental surgeons. Plaintiff was taken to three dentists, to the first about one year after the operation. X rays were taken by one of these dentists, Dr. Lewis, about two years later, in March of 1950. We have before us the record testimony of ten dentists, surgeons and neurologists who were called as witnesses by both plaintiff and defendants, and who qualified as experts in their field. It would unduly lengthen this opinion and serve no good purpose to detail this testimony, the substance of which, without exception, is to the effect that such an incident frequently occurs in the ordinary course of an operation where ordinary and reasonable care is used, and that baby teeth often are loosened and come out in such operations when it was thought, upon a cursory examination, that they were solid. Some of the dentists and surgeons testified that often a very light rub or pressure on "baby" teeth will loosen them. Nearly all of the witnesses, testifying as experts, stated that they had lost many in such operations because "baby" teeth have no roots. Plaintiff's own dentist testified that this caused no injury to the child, and that she has a badly constricted arch. Another specialist testified that the X rays showed decided restriction in the whole mouth which is a growth factor, and the loss of the baby teeth has nothing to do with the condition. Another specialist, Dr. Lewis, said the condition could be congenital. Dr. Trembley testified that it was a badly underdeveloped mouth, and such as a child about two years old would have. The neurologist, Dr. Rosenblum, testified that the loss of baby teeth would have no effect on the child's behavior or personality. It further was shown that some discomfort was to be expected following a tonsilectomy. Thus it appears that the child's condition, which the parents were trying to correct some year or two after the operation, was due to a natural cause of a restricted

mouth, which, according to the medical testimony, is a frequent occurrence and not at all rare. This condition prevents the incoming of the permanent teeth in a natural manner, in other words, the constriction of the mouth does not leave room for the teeth to come in properly and they are sometimes rotated or turned from their proper position.

It is significant to note that much of this kind of testimony came from plaintiff's own doctors and dentists, and was of such a nature that it caused counsel for plaintiff to cross-examine his own witnesses. Counsel for plaintiff in error contends that it was error for the trial court to refuse to instruct the jury that only nominal damages, if any, could be awarded plaintiff under the evidence. We see no error in this respect, because we fail to find from the evidence any negligence on the part of defendants which would justify a finding of any liability; in fact, it was not shown by any evidence exactly how the incident occurred, and neither of the operating doctors seemed to know, but said that without any apparent cause or reason, it happened frequently in such operations. Before liability would attach, if the injury could have been due to several causes, any one of which might have been the sole proximate cause, it must be shown as between these causes that it was the physicians' negligence that caused the injury.

Since it is clearly established that in the last analysis, there was no injury sustained by the child, and that her claimed present condition is due to natural causes and not affected, aggravated or superinduced by the loss of the baby teeth here involved, it is not necessary to further discuss the case other than to say that the court should have sustained the motion for directed verdict at the close of all the evidence, because of plaintiff's failure to support the burden of proof necessary to sustain her cause of action.

The judgment is reversed and the cause remanded with direction to dismiss the complaint.