Jane Craig FIELDS, by Craig Fields, Father
and Next Friend, Appellant,

v.

Charles C. RUTLEDGE, Appellee.

Court of Appeals of Kentucky.

Dec. 2, 1955.

**660**

O. T. Hinton, Pikeville, for appellant.

Baird & Hays, Pikeville, for appellee.

WADDILL, Commissioner.

Jane Craig Fields, acting by her father as next friend, sued Dr. Charles C. Rutledge for $25,000 damages alleged to have been sustained by her by reason of his malpractice in performing a tonsillectomy. The jury returned a verdict for defendant and on appeal plaintiff insists the court erred in: 1. not applying the res ipsa loquitur doctrine; 2. the rejection of testimony; 3. refusing instructions offered by her.

There is practically no contrariety in the evidence. The issue being, do the admitted facts show negligence on the part of defendant?

On April 19, 1954, defendant performed a tonsillectomy on Jane, who then lacked four months of being 7 years of age. The operation was performed in the Methodist Hospital in Pikeville and the child was given a general anesthetic. A device known as a "Davis mouth prop, or gag" was used to hold Jane's jaws apart and to keep her tongue depressed during the operation. It is the customary instrument used in such operations where a general anesthetic is given, and consists of a metal frame with rubber pads which rests against the teeth. After one tonsil is removed the "mouth prop" is loosened and shifted in the mouth and again fixed against the teeth so the surgeon will have access to the other tonsil.

When defendant removed the first tonsil and was shifting the "mouth prop" he noticed the two upper front teeth, or incisors as they are called, were so loose as to be practically out and he removed them with his fingers. He discarded the "mouth prop" and completed the operation by using a tongue depressor. Defendant was of the impression that the two teeth Jane lost were "milk or baby teeth" and was not concerned. After leaving the operating room he handed the teeth to her mother with the remark that she could put them under Jane's pillow so a fairy could bring the child a present. It developed these were permanent teeth and Jane had to be taken to Louisville to a pedodontist, Dr. Lyddan. Her mouth must be checked every six months and perhaps the denture will have to be changed three times before Jane is 18 years of age. All this will entail considerable expense on her parents.

The proof is that the "Davis mouth prop, or gag" was in good working order and was not defective. Defendant testified he used no more force than was necessary on the "mouth prop;" that he examined the child's throat, tonsils and teeth before the operation and, "did a more complete examination than is usual because Jane Craig is a 2-door neighbor" and he was fond of the child and her family. He thought her teeth were

firm. Defendant could not say why the teeth came out but his opinion is the patient, while under the influence of ether, involuntarily clamped down on the "mouth prop" and practically knocked out the teeth; and there were no precautions he could have taken to protect these teeth while performing the operation. This is the only case defendant knows of where two front teeth came out during the course of such an operation. Defendant testified he was experienced in performing this type of operation and that it is customarily done by a general practitioner, which he is.

Dr. Rutledge was corroborated by four physicians, all of whom were widely experienced in this line of surgery and all of them followed the procedure used by him, which was customary in such an operation. Two of these witnesses, Drs. W. C. Gose and T. I. Doty, were general practitioners; while the other two, Drs. Charles Wilson and Earl Wright, were ear, eye, nose and throat specialists. All four of these witnesses used the "Davis mouth prop or gag" and before such operations examined their patient's mouth in the manner defendant did.

Dr. Gose never had a patient to lose a tooth during a tonsillectomy, while Dr. Doty has known of six or eight instances from 1943 to 1946 where permanent teeth came out during the operation. He testified: "There is tremendous pressure brought on those gags sometimes; * * *. After your gag is in, you can't take very much precaution except just hope one of them (teeth) don't come out."

Dr. Charles Wilson has performed several hundred tonsillectomies using the method followed by defendant. Dr. Wilson testified he had not seen any teeth come out, but has heard of it happening and "it's something that could happen to anyone." He stated he "only looks to see if there are teeth to latch to and to see if they are loose."

Dr. Wright, with 17 years of experience in such operations, testified it was necessary to use a "mouth prop" on a child of Jane's age; and the surgeon and patient must run the risk of a tooth coming out; "It has happened to me and it has happened to just about every doctor that I know of that has removed very many tonsils." Several years ago Dr. Wright saw a child 10 or 11 years of age lose two permanent teeth in a tonsillectomy. In his experience Dr. Wright has seen "four or five or six instances" where teeth have been lost during a tonsillectomy. He further testified in reference to Jane's loss of teeth, "the only plausible reason I could give for that would be the pressure of the jaws through the teeth on the mouth gag."

Counsel for plaintiff in their brief say the doctrine of res ipsa loquitur generally applies to a physician or surgeon when he gets beyond the field of the operation and injures some sound portion of the patient's body not involved in the operation, citing many of our cases, such as, Miller v. Blackburn, 170 Ky. 263, 185 S.W. 864; Donoho v. Rawleigh, 230 Ky. 11, 18 S.W.2d 311, 69 A.L.R. 1135; Merker v. Wood, 307 Ky. 331, 210 S.W.2d 946, and such foreign cases as Ybarra v. Spangard, 25 Cal.2d 486, 154 P.2d 687, 162 A.L.R. 1258; Danville Community Hospital v. Thompson, 186 Va. 746, 43 S.E.2d 882, 173 A.L.R. 525. To combat plaintiff's contention, defendant relied upon such cases as Henley v. Mason, 154 Va. 381, 153 S.E. 653; Hazard Hospital Co. v. Combs' Adm'r, 263 Ky. 252, 92 S.W.2d 35, and McBrayer v. Zordel, 127 Colo. 438, 257 P.2d 962. This last case is not in point on the legal question involved, but was evidently cited because of a similar factual situation. However, as the trial court submitted the case to the jury without plaintiff proving any negligence on the part of defendant and as the jury found for defendant, we deem it unnecessary in the circumstances of this case to discuss or pass upon the question of whether or not res ipsa loquitur applies.

■ The testimony which plaintiff contends the court erroneously excluded was, soon after the operation defendant offered to give Jane's father a check for $300 on the child's dental bill, which appears in the

record as an avowal. Defendant was a neighbor of this child and of her parents and they were very good friends until this controversy arose. Certainly, such an offer by him was not an admission of liability, but was inspired by motives of friendship and human kindness. 2 Wigmore on Evidence (3rd Ed.) § 283a, p. 159, and the many cases cited in notes; Martin v. Burgess, 5 Cir., 82 F.2d 321.

■ The criticisms by plaintiff's counsel of the instructions are not well taken. The five instructions the court gave were for all intents and purposes the same as those offered by plaintiff, except as here noted, although expressed in a slightly different verbiage and form.

■ We call attention to an error in the second instruction offered by plaintiff. After correctly defining negligence as the failure to use that degree of care and skill exercised generally by physicians and surgeons in a community similar to the one described in the evidence in the performance of this type of operation, the instruction then stated defendant should use ordinary care "to ascertain whether the teeth involved were permanent or baby teeth and to take such precautions as are usually taken in such cases to avoid damage to or destruction of such teeth." Instructions should never give undue prominence to certain facts and issues. Stanley's Instructions to Juries, § 28, p. 44; Greenway v. Watson, 268 Ky. 745, 105 S.W.2d 848. The instruction given by the court after properly defining ordinary care and negligence, as was correctly done in the instruction offered by plaintiff, then allowed a recovery if defendant failed to exercise it and plaintiff suffered injury to her teeth. But it is not subject to the error in the instruction offered by plaintiff of giving undue prominence to the teeth.

■ Counsel for plaintiff contend the trial court by submitting to the jury the question of whether plaintiff's teeth were injured by negligence of defendant, excluded the res ipsa loquitur doctrine from the case. They argue this was tantamount to a directed verdict for defendant since there is no claim he was negligent in removing the tonsils. This argument is without merit as the whole question in the case is whether or not defendant negligently caused plaintiff to lose her two front teeth. Plaintiff argues as if she was entitled to a directed verdict, which she was not, and she never even asked that a verdict be directed in her favor.

■ Defendant's counsel insist plaintiff should not be heard to complain of the instructions since she did not except to those given by the court. It is provided in CR 51 "No party may assign as error the giving or the failure to give an instruction, unless he objects thereto before the court instructs the jury, stating specifically the matter to which he objects and the grounds of his objections." In Clay CR page 458, dealing with the necessity of objecting to an instruction after one had been requested, it is pointed out that "an objection to an unfavorable ruling would be inherent in the request for an instruction and a subsequent objection would be simply a needless formality which Rule 46 was designed to obviate." However, in his last paragraph on the subject, the author says a strict compliance with Rule 51 requires a specific objection even if a request for an instruction had been made. But he states Rule 51 should not be so construed as to permit entrapment of a party failing to make an independent objection if the requested instruction clearly presents his position. We hereby adopt Judge Clay's interpretation of Rule 51. The instructions offered by plaintiff clearly presented her position and we hold when the court refused to give them, there was no necessity for her to make a specific objection to save her right to attack on appeal the instructions the court gave in lieu of those her counsel offered. But as stated above, the instructions given by the court were substantially correct and plaintiff's criticisms thereof are not sound.

The judgment is affirmed.