RICHARD P. MOGENSEN, appellee, v. WAYLAND K. HICKS and
DWAYNE HOWARD, individually and as HICKS &
HOWARD, a partnership, et al., appellants.

No. 50347.

140

Sifford & Wadden and Harper, Gleysteen & Nelson, all of Sioux City, for appellants Wayland K. Hicks and Dwayne Howard, individually and as Hicks & Howard a partnership.

Shull, Marshall, Mayne, Marks & Vizintos, of Sioux City, for appellant Ciba Pharmaceutical Products, Inc., a corporation.

Hess, Pendleton & Thompson, of Sioux City, for appellee.

Peterson, J.—This is an action seeking damages for malpractice. Plaintiff sued not only his physicians, Doctors Hicks and Howard, but Ciba Pharmaceutical Products, Inc., who produced the anesthesia under question, Lutheran Hospital, where the medical services were rendered, and Toller Drug Company from whom the anesthesia was purchased. The trial court sustained motion to direct verdict in favor of Toller Drug Company. The jury failed to return a verdict against Lutheran Hospital. A verdict of $8000 was returned against Doctors Hicks and Howard, and Ciba. They have appealed.

Plaintiff's petition contained two counts. Count I was based on the doctrine of res ipsa loquitur. Count II alleged specific negligence. The court sustained motion to strike Count II.

Plaintiff has not appealed from the adverse orders of the court, nor from the failure of the jury to return verdict against Lutheran Hospital.

Plaintiff is a young man 28 years of age. He had experienced some bleeding when he urinated. His family physician, Dr. I. C. Vangsness, arranged with Doctor Hicks, a specialist in urology, to make a cystoscopic examination on the morning of September 27, 1957, at Lutheran Hospital in Sioux City.

Plaintiff was brought into a room known as the cystoscopic room, and placed on a table near the center of the room. Elfrieda Aljets, an experienced and registered nurse, was on duty and made all the preliminary arrangements as to complete cleanliness and sterility. Walter M. Trizala was Doctor Hicks anesthetist. He was a technical sergeant during the war, working in the urology department in a hospital in Germany, administering topical anesthesia. Since his discharge from the army he had worked for Doctor Hicks about ten years. He had administered between four and five thousand anesthetic applications.

The only persons in the room were plaintiff, the nurse, Mr. Trizala and Doctor Hicks. While Mr. Trizala was preparing plaintiff for the examination Doctor Hicks was talking with Doctor Vangsness, the family physician, immediately outside the door of the room, a few feet from the examination table.

The anesthesia which Doctor Hicks was using was known as pyribenzamine, manufactured by defendant Ciba. After several years of research and after approval of the Federal Food and Drug Administration in October 1954 the drug was placed on the market in the spring of 1955.

Doctor Hicks had used it for several months. Mr. Trizala had administered it successfully as a topical anesthesia between 30 and 40 times. Topical administration means it is used on the skin as a local anesthesia for the part of the body affected.

Mr. Trizala brought a new bottle of the anesthesia with him, which Doctor Hicks had purchased a few days earlier at Toller Drug Company. The seal was broken in the presence of the nurse, and each read the name of pyribenzamine on the label, out loud, as a double check.

The nature of the examination was through the penis, in order to examine the bladder, kidneys and prostate gland, for the purpose of finding the basis of the bleeding.

To do this without pain or discomfort to the patient, it was necessary to anesthetize the penis.

Mr. Trizala and the nurse placed 5 cc. of pyribenzamine in a sterilized syringe, and Mr. Trizala applied the anesthesia. He had injected from 1 to 1½ cc. when plaintiff said he felt a burning sharp pain. Mr. Trizala at that time said he noticed the skin around the urethra became white. He ceased further injection and called Doctor Hicks, who was standing close by. Doctor Hicks immediately decided not to proceed with the examination that morning, and thoroughly washed out the penis with sterile water. The Doctor testified: "It was a good anesthesia. I had no trouble using it with other patients. My opinion is that plaintiff had an allergic reaction."

Plaintiff was removed to a hospital room, and was in the hospital four days.

Dr. Louis J. Frank, an experienced dermatologist was called. He said he saw plaintiff and "observed some swelling in the head of the glans surrounding the urethra. There was some inflammation there, yet it did not appear to be very severe as I saw it. He had no difficulty passing urine. * * * we put him on steroid therapy internally, which was used to help control allergic reactions * * * and wet packs locally." Doctor Frank was asked as to what, in his opinion, caused the condition described by plaintiff. His answer was: "My opinion was that he had an allergic reaction to pyribenzamine which was used as a local anesthetic."

Plaintiff was away from work two weeks. His employer was kind and paid him his wages for the time off. When he returned he had to do light work for three or four weeks. In February of 1958 Doctor Hicks made the examination which had been contemplated in September under a general anesthetic. Plaintiff was in the hospital two or three days. He said thereafter the pain persisted for six or eight weeks. He said that at the time of trial he still had a little pain, and was still having some "spraying" action when urinating.

I. The only question in the case is whether the doctrine of res ipsa loquitur is applicable. If not, the motion by defendants, for judgment notwithstanding verdict, should be sustained.

■ The essential component parts of res ipsa (as we will denominate the doctrine) are: a. The instrumentalities causing the injury must have been under the exclusive control of defendants, and b. The happening of the injury must be such that in the ordinary course of events it would not occur without lack of due care on the part of defendants.

■ II. The doctor was not in full control of the instrumentalities involved. He controlled the surgical instruments and the medicine, but he had no control over the condition and reactions of his patient. The allergic reaction of plaintiff in the instant case was an element beyond his control.

The doctrine of res ipsa loquitur should be used sparingly. Shinofield v. Curtis, 245 Iowa 1352, 66 N.W.2d 465, 471, 50 A. L. R.2d 964; 65 C. J. S., Negligence, section 220(10).

A doctor's constant contact are with the frailties, idiosyncrasies, physical and mental weaknesses, and allergies, of human nature. They may affect the condition, and yet are beyond his control.

It is for this reason that in many medical cases the doctrine of res ipsa has been rejected. Berg v. Willett, 212 Iowa 1109, 232 N.W. 821; Gebhardt v. McQuillen, 230 Iowa 181, 186, 187, 297 N.W. 301; Lippard v. Johnson, 215 N. C. 384, 1 S.E.2d 889; Prewitt v. Higgins, 231 Ky. 678, 22 S.W.2d 115; Hawkins v. McCain, 239 N. C. 160, 79 S.E.2d 493; 53 A. L. R.2d 148; Groce v. Myers, 224 N. C. 165, 29 S.E.2d 553; Whetstine v. Moravec, 228 Iowa 352, 291 N.W. 425.

In Gebhardt v. McQuillen, supra, the court refused to apply the doctrine, and said:

"In fact, the rule of res ipsa loquitur is seldom applied to cases of malpractice by physicians or surgeons. * * * The physical condition of the patient, the nature of the injury—many things over which the physician has no control—may enter into the case and affect the result; * * *.

"The rule of res ipsa loquitur does not apply, because one of its essentials is lacking—the physician or surgeon does not

have complete and exclusive control over the instrumentality with which he is working."

Lippard v. Johnson, supra, involved a circumcision operation; a blister arose at the site, and decay set in. The court refused to apply the doctrine of res ipsa, and said at pages 386, 387 of 215 N. C., page 890 of 1 S.E.2d: "Therefore, to say that an unexpected, unanticipated and unfavorable result of a treatment by a physician invokes the application of the doctrine of res ipsa loquitur would be * * * to destroy its recognized usefulness in proper cases." Also: "Practical application of the medical science is necessarily to a large degree experimental. Due to the varying conditions of human systems the result of the use of any medicine cannot be predicted with any degree of certainty. What is beneficial to many sometimes proves to be highly injurious to others."

Moreover, a physician is not a warrantor of cures nor an insurer.

In Hawkins v. McCain, supra, the doctor prescribed a treatment which had an adverse effect, and the patient sued. The court said at page 169 of 239 N. C., page 500 of 79 S.E.2d: "* * * Furthermore, if it was an approved and acceptable treatment and the dosages as prescribed proper, the mere fact that she had an unfavorable reaction from its use would not make the doctrine of res ipsa loquitur applicable."

The evidence does not sustain plaintiff's claim that defendants were subject to the first requisite as to res ipsa loquitur.

III. The other element in res ipsa is that the occurrence is such as in the ordinary course of events would not happen if reasonable care had been used. The latin phrase "res ipsa loquitur" means "the thing speaks for itself."

We have already held in Division II that res ipsa is not applicable. Under the facts and circumstances of the case at bar and under previous decisions of this court pertaining to such element, the second element of res ipsa is also absent. Orr v. Des Moines Electric Light Co., 207 Iowa 1149, 222 N.W. 560; Bonowski v. Revlon, Inc., 251 Iowa 141, 100 N.W.2d 5; Shinofield v. Curtis, supra; Eaves v. City of Ottumwa, 240 Iowa 956, 38 N.W.2d 761, 11 A. L. R.2d 1164; Pearson v. Butts, 224

Iowa 376, 276 N.W. 65; Highland Golf Club v. Sinclair Refining Co., D. C. Iowa, 59 F. Supp. 911, Judge Graven. See also 38 Am. Jur., Negligence, section 95.

We have recently held, by unanimous action, that a manufacturing company is not liable for damages where the basis of the injury is an allergy on the part of the user. Bonowski v. Revlon, Inc., 251 Iowa 141, 100 N.W.2d 5. Mrs. Bonowski used Revlon "Sun Bath, for Normal Skin." It caused blotches and blisters on her face, arms and legs, and she was sick for about five weeks. Doctors Leiter and Frank, dermatologists, both testified her injury was due to allergic reaction to the sun tan. A witness for Revlon testified 5,304,272 bottles had been sold at the time of trial, without receiving any complaint. The trial court directed a verdict for defendants, and we affirmed.

A somewhat analogous situation arose in Shinofield v. Curtis, supra. Plaintiffs' decedent was brought to her hotel in defendant's truck. She said "Goodnight" and alighted in the street. Defendant looked back and did not see her on the curb, so stopped his truck and walked back to investigate. He found her in the street, so seriously injured that she died in a few moments. Apparently his truck had passed over her face and body. We held the case should go to the jury on the specific negligence count, but not on the count alleging res ipsa loquitur. As to res ipsa the court said:

"The res ipsa rule should not be confused with the proposition that the negligence, like other facts, may be proven by circumstantial evidence. * * *.

"It is true the truck which ran over decedent was in defendant's exclusive control and management. Thus the first of the two foundation facts on which the res ipsa doctrine rests is present here. But we think it cannot be said such an occurrence as caused decedent's injury does not, in the ordinary course of things, happen if reasonable care is used by the motorist. As we have indicated, evidence which may show negligence in this particular case is not to be considered in determining the presence of this second foundation fact. The question is to be determined from common experience. Annotations, 59 A. L.

R. 468, 78 A. L. R. 731, 141 A. L. R. 1016." (Pages 1360, 1361 of 245 Iowa)

■ The clearest, and perhaps most lucid analysis, of this element of the doctrine of res ipsa appears in Eaves v. City of Ottumwa, 240 Iowa 956, 969, 38 N.W.2d 761, 769, 11 A. L. R.2d 1164: "In considering the applicability of res ipsa loquitur, the question whether the particular occurrence is such as would not happen if reasonable care had been used rests on common experience and not at all on evidence in the particular case that tends in itself to show such occurrence was in fact the result of negligence."

Appellee leans heavily on Frost v. Des Moines Still College, 248 Iowa 294, 79 N.W.2d 306, to support his contention as to res ipsa. The case is not applicable. The operation was on Mrs. Frost's back, as the result of an automobile accident. The injury at the hospital, for which the verdict was returned, consisted of first-, second- and third-degree burns on her stomach, apparently through over usage or spilling of ether as she was being prepared for the operation. She was unconscious from a general anesthetic, and could not testify as to what happened. Res ipsa was applicable in her case.

■ IV. Plaintiff's Count II as to specific negligence was dismissed by the court. Plaintiff did not appeal, nor did he present any errors, propositions or argument as to the question in his brief and argument. R. C. P. 344 (a) (4) Third provides: "Errors or propositions not stated or argued shall be deemed waived."

In view of our decision as to res ipsa, discussion of general rules of malpractice in Iowa are not material nor necessary.

The case is reversed, with instructions to the trial court to sustain defendants' motions for judgment notwithstanding the verdict.

The printing cost of the record and defendants' two briefs and two reply briefs totals $683.20. The record and briefs total 250 pages. Under our rules we have placed a maximum of $1.50 per page for printing. It can be secured in Iowa for that amount, or less. Only $375 shall therefore be taxed to appellee

for appellants' printing cost. The balance of $308.20 shall be assumed by appellants.—Reversed.

GARFIELD, C. J., and BLISS, HAYS, LARSON, THOMPSON and THORNTON, JJ., concur.

SNELL, J., concurs specially.

OLIVER, J., takes no part.

SNELL, J. (concurring specially)—I concur in the result and agree that the verdict must be set aside. We do not have before us any issue based on allegations of specific negligence. The sole question is the sufficiency of the evidence to generate a jury question under the doctrine of res ipsa loquitur. The evidence shows that immediately following a partial administration of a topical anesthetic the plaintiff suffered an unfortunate and unexpected reaction. Nothing further appears to sustain the plaintiff's claim.

What is commonly called the second foundation fact necessary to support the res ipsa loquitur inference is that the happening of the injury was such as in the ordinary course of events would not have occurred without negligence on the part of defendants.

This requirement rests on common experience. It is a rule of evidence, not of substantive law. Thompson v. Burke Engineering Sales Co., 252 Iowa 146, 152, 106 N.W.2d 351, 355.

The doctrine does not create liability without fault. The doctrine does not assume that there is necessarily negligence preceding misfortune.

Orr v. Des Moines Electric Light Co., 207 Iowa 1149 · at 1155, 222 N.W. 560, 562, quotes Corpus Juris as follows: " '* * * the doctrine is applicable only where the physical cause of the injury and the attendant circumstances indicate such an unusual occurrence that in their very nature they carry a strong inherent probability of negligence, and in the light of ordinary experience would presumably not have happened, if those who had the management or control exercised proper care. Accordingly the mere occurrence of an unusual or unexplained accident or injury, if not such as necessarily to involve negligence, does

148

not warrant the application of the doctrine, * * *' 45 Corpus Juris 1211."

The only evidence for plaintiff related to his unfortunate reaction to medication. That evidence alone will not "carry a strong inherent probability of negligence." From that evidence alone it cannot be said that "in the light of ordinary experience" the reaction would not have occurred with proper care.

Doubt, if any (or curiosity), as to what happened is removed by the uncontradicted evidence of defendants.

The anesthetic used had been previously, and was subsequently, tested by the manufacturer. It was extensively used in the medical profession. The application to the plaintiff was by approved procedure in an amount well below recognized and recommended tolerances.

The plaintiff suffered an allergic reaction. The doctor acted promptly to relieve the distress. An allergic reaction will not support a right to recover damages. Bonowski v. Revlon, Inc., 251 Iowa 141, 100 N.W.2d 5.